No. 90-625

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

BENJAMIN L. BROWN,

      Plaintiff and Appellant,

-vs-

FLOYD SMALL and JOHN C. DOUBEK,

      Defendants and Respondents.

FILED

JAN 28 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

    Gerald J. Neely, Attorney at Law, Billings, Montana

    For Respondent:

    Douglas A. Buxbaum and Mark Mattioli; Poore, Roth and Robinson, Butte, Montana


Submitted on Briefs:  July 25, 1991

Decided:  January 28, 1992

Filed:

                            Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On March 17, 1988, Benjamin Brown filed a legal malpractice complaint against Floyd Small and John Doubek in the First Judicial District Court in Lewis and Clark County. The District Court granted summary judgment for Small and Doubek and dismissed the complaint on October 9, 1990. Brown appeals. We affirm.

The issues are:

1. Did the District Court err when it granted summary judgment against Brown on his claim of professional negligence?

2. Did the District Court err when it granted summary judgment against Brown on the portions of his complaint that attempted to reopen an earlier lawsuit that Brown had dismissed with prejudice?

In 1981, Brown owned several commercial properties in Helena, including the Denver Block Apartment Building. During the early morning of May 26, 1981, the Denver Block was badly damaged by fire. Brown, who had previously employed Helena attorney Carl Hatch, retained Hatch's partners, Floyd Small and John Doubek, to assist him in recovering payment from his insurer. For a number of reasons, coverage was vigorously disputed.

Brown settled his claim with the insurer on August 19, 1981, for $315,000, and executed a settlement agreement. Claims against Brown's recovery by other parties reduced Brown's share to $109,963.80. Small and Doubek then charged Brown a contingent fee of $25,000. Brown claimed he had not agreed to a contingent fee, but he paid the fee despite his objection.

2

On March 15, 1984, Brown filed a complaint against Small and Doubek, alleging that they had overcharged him for their services. In that action, Brown claimed that by charging a contingent fee Small and Doubek had breached an oral contract to bill only by the hour. During the preparation of their defense in that action, Small and Doubek discovered that in 1980 Brown's insurer had issued a mid-term endorsement to Brown's fire insurance policy on the Denver Block. The 1981 settlement with the insurer did not include the additional coverage available under this mid-term endorsement. The reasons why this endorsement was not originally considered are now disputed by the parties.

Small and Doubek then arranged for a settlement conference with Brown on March 19, 1985. Brown attended with his attorney R. J. Sewell, Jr., to whom he had transferred his business after leaving Small, Hatch, and Doubek. At this meeting, Doubek explained that he had come across "work product" that might result in recovering more money from Brown's insurer. Doubek offered to use this "work product" on Brown's behalf in exchange for Brown's agreement to dismiss his complaint against Small and Doubek. Doubek refused to disclose the nature of the "work product" he had discovered.

Sewell protested vehemently. He took Brown aside and advised him that Brown should refuse to accept the offer. Sewell refused to sign any such agreement between Brown and his former attorneys and left the meeting.

Doubek had originally suggested that he could recover as much as $15,000 with the "work product." Brown, however, insisted that he would not agree to dismiss the first lawsuit unless Doubek would promise to recover $20,000. Brown then signed an agreement in which he gave Small and Doubek four months to recover an additional $20,000 from the insurer. In this agreement, Brown specifically consented to a contingent fee arrangement. The agreement also provided that if Small and Doubek succeeded in recovering $20,000 from the insurer, Brown would dismiss his first lawsuit with prejudice.

Subsequently, Small and Doubek used the mid-term endorsement to recover another $112,500 from the insurer. It appears from the record that this amount was based at least in part on Brown's allegation that his insurer had fraudulently and in bad faith concealed the existence of the mid-term endorsement. Brown further alleged that the insurer had misrepresented the available coverage as $277,200 instead of the true amount, $325,000. Brown netted almost $75,000 after deduction of costs and the contingent fee. On August 16, 1985, Brown stipulated to a dismissal of his first lawsuit with prejudice. Small and Doubek regarded the matter as finally settled.

Brown then filed the present complaint on March 17, 1988. In this second lawsuit, Brown sought (1) damages for the allegedly negligent failure of Small and Doubek to discover the mid-term endorsement before the 1981 settlement with the insurance company; and (2) rescission of the 1985 settlement with Small and Doubek and

4

reinstatement of the first lawsuit. The pretrial order clearly indicates that Brown was unprepared to present expert testimony on the standard of care applicable to Small and Doubek.

Both parties moved for summary judgment. The District Court granted summary judgment for Small and Doubek, noting that the new negligence theory was fatally flawed due to Brown's failure to arrange for expert testimony and that reinstatement of the first lawsuit was barred under the doctrine of *res judicata*. The court then dismissed Brown's complaint. It is from this order of summary judgment and dismissal that Brown appeals.

## I

Did the District Court err in granting summary judgment on Brown's claim of professional negligence?

Brown's position on his negligence theory is inconsistent with the theory his agents used to obtain a second recovery from the insurance company. Acting as his attorneys, Small and Doubek filed a second action against Brown's insurer. Pertinent portions of the complaint in that action read as follows:

### VIII.

That . . . [the insurer] did not fulfill its <u>clear responsibility</u> to [Brown] at the time of said resolution of the underlying claim <u>by not informing [Brown] that the said endorsement was in effect when [Brown] submitted his proof of loss statement.</u>

### IX.

That said breach of responsibility was <u>false, fraudulent, done in bad faith and for the purpose of producing a substantial loss to [Brown].</u>

5

## X.

> That [Brown] did in fact rely upon the <u>false, fraudulent, and bad faith misrepresentations</u> of [the insurer] to his detriment and was damaged thereby. [Emphasis added.]

Small and Doubek settled this second action with the insurer for $112,500, and Brown accepted his share of almost $75,000 without protest. Now, however, he claims that it was the negligence of his attorneys, rather than the bad faith of the insurer, that resulted in the inadvertent exclusion of the mid-term endorsement from the first settlement with the insurance company. If the insurer actively concealed the endorsement in bad faith, it is difficult to see how Small and Doubek were negligent in not discovering it.

This attempt by Brown to take inconsistent positions is barred by judicial estoppel. In *Rowland v. Klies* (1986), 223 Mont. 360, 726 P.2d 310, we said:

> Judicial estoppel may arise when a person has taken a position or asserted a fact under oath in a judicial proceeding contrary to the position he is taking in the present litigation . . . The rule's purpose is to suppress fraud and prevent abuse of the judicial process <u>by deliberate shifting of positions to suit the exigencies of a particular action</u>, and it will not be applied when the previous act or statement is uncertain or based on undetermined facts, but only when it is clear and certain. (Citations omitted.) [Emphasis added.]

*Rowland*, 726 P.2d at 316 (quoting *LaChance v. McKown* (Tex. Ct. App. 1983), 649 S.W.2d 658, 660). In *Rowland*, we applied judicial estoppel against a party who sought to take a position contrary to an earlier sworn affidavit. *Rowland*, 726 P.2d at 316.

Judicial estoppel is equally applicable to a party like Brown who seeks to take a position contrary to his pleadings in an earlier judicial proceeding. *Fey v. A.A. Oil Corp.* (1955), 129 Mont. 300, 323, 285 P.2d 578, 590. The doctrine applies with additional force here because Brown's allegation in the second complaint against the insurer resulted in a net recovery by him of almost $75,000. After accepting the benefits of that allegation, Brown cannot now change his position and allege that negligence by Small and Doubek was the real reason they did not discover the mid-term endorsement sooner.

Furthermore, Brown failed to alleviate this apparent inconsistency by arranging for expert testimony. In *Carlson v. Morton* (1987), 229 Mont. 234, 745 P.2d 1133, we held that expert testimony is ordinarily required in legal malpractice cases. We said:

> To expect a jury to sit through hours of examination and cross-examination, without the guidance of an attorney's expert testimony and then arrive at a verdict consistent with the evidence is asking much. This is not because the average juror is not capable of understanding such matters but only because he or she has never had the occasion or desire to study such matters. The attorney's standard of care depends upon the skill and care ordinarily exercised by attorneys, a criteria that rarely falls within the common knowledge of laymen. . . .
>
> It is true that there are instances in which legal malpractice actions have been submitted for fact determination without the use of expert testimony. The theory in such cases is that the attorney's misconduct is <u>so obvious that no reasonable juror could not comprehend the lawyer's breach of duty</u>. [Emphasis added.]

*Carlson*, 745 P.2d at 1137.

7

Brown attempts to bring his case within the exception rather than the general rule by arguing that jurors would not need expert assistance in deciding "whether a lawyer hired to collect insurance proceeds ought to look at the piece of paper which says how much insurance there is." We note, however, that the "piece of paper" to which Brown refers is the very same document he previously accused the insurance company of concealing from Small and Doubek in bad faith. Based on that inconsistent representation Brown has already been compensated.

In analyzing Brown's argument that the case is too simple to require expert testimony, the District Court said:

> The allegations of Count One are very complicated. The allegations deal with matters of insurance coverage and an attorney's duty to seek out the maximum coverage possible for his client for a loss. The allegations also deal with the duty owed a former client, since in the view of this Court, these parties were not in an attorney/client relationship in March 1985. Rather, on March 19, 1985, they were engaged in a hotly contested lawsuit and it cannot be said that the duty owed by Doubek to his former client Brown is one that is commonly known by lawyers, let alone by lay people.

> Indeed, the complexity of this matter can be seen by looking at page 5 of Plaintiff's supplemental memorandum filed on September 14, 1990. At page 5, Plaintiff indicates that Doubek's duty was to determine the existence, nature, and amount of any midterm endorsement to the primary policy issued after the primary policy. Plaintiff has not directed this Court to any authority that shows that this duty is commonly known to lay people.

We agree. In a case such as this one, in which the plaintiff has already been compensated based upon an allegation that his insurer took affirmative steps to conceal the key document from the

defendant attorneys, expert testimony on the standard of care is critical.

We hold that the District Court did not err when it granted summary judgment against Brown on his professional negligence claim on the basis of Brown's failure to provide expert testimony.

## II

Did the District Court err when it granted summary judgment against Brown on the portions of his complaint that attempted to reopen the earlier lawsuit that Brown had dismissed with prejudice?

In counts two through ten of the complaint in the case at bar, Brown sought to set aside the March 1985 settlement agreement and the accompanying dismissal with prejudice of the first lawsuit. Because Brown cannot resurrect the first lawsuit unless he can show grounds to set aside the dismissal, we turn first to the question of whether Brown has shown sufficient grounds for setting aside the dismissal. We conclude that he has not.

A party who seeks relief from a final order can either file a Rule 60(b) motion for relief or file an independent equitable action based on the grounds enumerated in that Rule's residual clause. Rule 60(b), M.R.Civ.P. Brown has not filed a Rule 60(b) motion so we treat his action as arising under the residual clause. *See Salway v. Arkava* (1985), 215 Mont. 135, 695 P.2d 1302.

In *Salway*, we held that the residual clause of Rule 60(b) provides one who seeks relief from a judgment with three avenues of attack: extrinsic fraud, lack of personal notification, and fraud

9

upon the court. *Salway*, 695 P.2d at 1305-06. We do not consider lack of personal notification here because it is inapplicable.

In *Salway*, we characterized extrinsic fraud as "some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy." *Salway*, 695 P.2d at 1306. In this case, Brown was not misled by his former attorneys. He acted contrary to the advice of his new attorney based on what he perceived to be in his best interest at that time. Small and Doubek did not prevent him from obtaining a fair submission of the controversy. It was Brown's own action in stipulating to the dismissal that resulted in the case not being submitted to the District Court. We conclude that Brown has not made out a case of extrinsic fraud.

Fraud upon the court is "that species of fraud which does or attempts to subvert the integrity of the court itself." *Salway*, 695 P.2d at 1306. Examples of fraud upon the court include bribery, evidence fabrication, and improper attempts to influence the court by counsel. *Salway*, 695 P.2d at 1306. Generally, fraud between the parties, without more, does not rise to the level of fraud upon the court. *Salway*, 695 P.2d at 1306.

Brown was an active and informed participant in what he now seeks to characterize as fraud upon the court. He stipulated to the dismissal of his own lawsuit with prejudice despite his attorney's advice to the contrary. Brown may have made a bad bargain with Small and Doubek but it does not rise to the level of

10

a fraud that "subvert[s] the integrity of the court itself." We conclude that Brown has not made out a case of fraud upon the court.

Because Brown has shown neither extrinsic fraud nor fraud upon the court, we hold that the District Court did not err when it granted summary judgment against Brown on his attempt to set aside his dismissal of the first lawsuit.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11