No. 93-038

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MARIAN JOAN WISE,

      Plaintiff and Respondent,

  v.

EDWIN KEITH NIRIDER,

      Defendant and Appellant.

FILED

NOV - 2 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          James C. Bartlett, Hash, O'Brien & Bartlett,
          Kalispell, Montana

       For Respondent:

          Donald E. "Gene" Hedman, Hedman,
          Hileman & LaCosta, Whitefish, Montana

Submitted on Briefs:  June 1, 1993

Decided:  November 2, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Marian Joan Wise filed a complaint in the District Court for the Eleventh Judicial District in Flathead County to set aside the property settlement agreement she entered into with Edwin Keith Nirider, and to reopen their dissolution proceedings. After a trial on the merits, the District Court entered judgment for Marian granting the relief she sought. Edwin appeals from that judgment. We reverse the District Court.

The issue on appeal is whether the District Court erred when it set aside the property settlement agreement and reopened the dissolution proceedings based on findings of extrinsic fraud upon the court and unconscionability of the agreement.

The marriage of Marian Joan Wise and Edwin Keith Nirider was dissolved on August 6, 1987, after 33 years. Judge Michael H. Keedy, who presided over the dissolution proceedings, approved a property settlement agreement entered into by the parties on July 9, 1987, and amended on July 30, 1987. This agreement, which was incorporated into the dissolution decree, purported to distribute the parties' entire marital estate.

Marian and her attorney, Randy Ogle, drew up the property settlement agreement. Edwin did not discuss the contents of the agreement with Randy Ogle, and did not retain his own counsel. Edwin voluntarily signed the agreement and concurred with the amendments, but made no appearance in court during the proceedings.

The agreement, in part, provided for a distribution of the marital estate. The parties' real property was to be sold and the

2

proceeds divided equally. Marian was to receive certain tangible items, and approximately $22,500 consisting of an IRA and an inheritance from her mother. Edwin was to receive certain tangible items, the "personal property in his possession," and cash and IRA funds totalling $19,500. Additionally, Marian was to receive $50 per month as maintenance, and she reserved the right to petition the court for a modification in the event of changed circumstances.

The addendum to the separation agreement provided that Marian would receive $3,600 from Edwin's share of the proceeds from the sale of the residence as compensation for her interest in a windshield business which was retained by Edwin.

At the time of the dissolution, Edwin was retired from the Atlantic Richfield Company (ARCO) Aluminum Plant at Columbia Falls and was drawing retirement income of $1,120 per month. This would continue until July 1, 1992, at which time he would become eligible for Social Security benefits and the pension would be reduced to $495 per month. Although Marian's knowledge of her right to share in the pension plan as a marital asset is disputed, it is undisputed that both parties knew of the existence of the ARCO pension plan at the time they entered into the separation agreement. Marian's attorney also testified that he knew of the pension plan when he prepared the settlement agreement. However, neither the agreement, nor the dissolution decree, mention the pension plan specifically and no part of the pension was distributed to Marian.

Three months after the dissolution was finalized, Marian petitioned for modification of the maintenance award. She sought to increase maintenance to $800 per month because she was unable to meet her living expenses. Edwin resisted this motion and it was ultimately dismissed by stipulation on November 1, 1988.

On May 25, 1989, Marian filed this independent cause of action against Edwin for fraud. She alleged that, while negotiating the settlement agreement, Edwin represented to her that the retirement program was personal in nature and was not a marital asset subject to division between the parties. The complaint was later amended to include claims of unconscionability and extrinsic fraud upon the court. It was Marian's contention that Edwin's failure to disclose the provisions of the pension plan, and her entitlement to a portion of the pension, constituted a fraud upon the court which rendered the property settlement agreement unconscionable, and that it should, therefore, be set aside and the dissolution reopened.

A trial was held on April 27, 1992, before Judge Ted O. Lympus in which Marian, Edwin, and Marian's attorney, Randy Ogle, presented contradictory testimony. In deposition testimony, Ogle stated that he informed Marian that the pension was a marital asset subject to division. However, Ogle testified that Marian told him not to make the pension an issue because she did not want to delay the divorce. She said that Edwin considered the pension to be his asset that he had accumulated during his years of work at ARCO, and would become upset if she sought a share in it.

4

Ogle stated that he told **Marian** she was asking for too little maintenance and that she ought to pursue a portion of the pension as a marital asset. **Marian** had originally wanted $350 per month in maintenance, but reduced her request to $50 per month when, according to her, Edwin became angry. Edwin did admit that he told **Marian** that if she sought more financial support from him, he would retain a lawyer.

Ogle did not explain the failure to identify the **ARCO** pension fund in the settlement agreement, but stated that when he drafted the agreement using the phrase "the personal property in his possession," it was his intent, based on **Marian's** statements, that the pension fund was to go entirely to Edwin.

**Marian,** however, testified that she had no idea of the value of the pension plan, never asked her attorney about it, and never believed she was entitled to share in the pension as a marital asset. Although she acknowledges that she told Ogle of the existence of the pension, she denies Ogle's claim that he told her the pension **was** a **marital asset** and she had the right to share in it. **Marian** said she did not discuss a possible division of the pension with Edwin because she was intimidated by him and was fearful of him. It is her contention that she never willingly waived an interest in Edwin's pension benefits.

In contrast, Edwin testified that **Marian** told him she was entitled to half of the pension plan but was not going to seek this in the separation agreement. He admitted, however, that he may

5

have told Marian, prior to the time she retained counsel, that the pension was his and she had no right to any of it.

In its findings of fact, conclusions of law, and judgment issued on October 30, 1992, the court set aside the property settlement agreement and reopened the dissolution proceeding in order to effect a "fair and equitable division of all marital assets," including the ARCO pension plan. This conclusion was based on the court's finding that the separation agreement did not provide for a division of the pension plan and that Marian had not willingly, voluntarily, or knowingly waived her interest in this marital asset. The court rejected Ogle's argument that the phrase "all personal property in [Edwin's] possession" included the pension plan. Although the court found that Marian was aware of the existence of the pension plan benefits, it found that she was not aware that she had a legal right to a portion of this until the time that her action for fraud was commenced.

The court further found that there had been no disclosure of the existence of the pension plan at the time Judge Keedy presided over the dissolution proceedings, and it concluded that this absence of evidence constituted "however unwittingly, the commission of an extrinsic fraud upon that Court." The court did not attribute fault to either Marian or her attorney, but found that/because Marian was under stress due to her intimidation and fear of Edwin's anger and wished to end the marriage without delay, these factors resulted in a fraud upon the court. Finally, the court concluded that because Marian had received none of the

retirement benefits, the provisions of the separation agreement were unconscionable.

Edwin filed a motion to alter or amend the judgment. This motion was denied on December 30, 1992. In its order and rationale, the court clarified its conclusion that Edwin had committed a fraud on **Marian** which resulted in the commission of a fraud upon the court.

From the court's judgment, and subsequent order denying the motion to alter or amend the judgment, Edwin appeals.

Did the District Court err when it set aside the property settlement agreement and reopened the division of property based on findings of extrinsic fraud upon the court and unconscionability of the agreement?

We note first that **Marian** did not file a timely appeal from the dissolution decree but instead sought relief from the judgment through an independent action as provided for in Rule 60(b), **M.R.Civ.P.,** which provides:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court.

**Marian's** independent action, filed nearly two years after the dissolution decree was entered, was premised on allegations of fraud by Edwin, unconscionability of the separation agreement, and extrinsic fraud upon the court. However, the only allegation upon which relief could be granted at the time she filed her action was

her allegation of fraud upon the court. With regard to unconscionability or fraud between the parties, Marian did not seek timely relief through an appeal, or a Rule 60(b)(3) motion which would allow for relief from a final judgment in instances of "fraud, misrepresentation, or other misconduct."

Although the District Court discusses the resulting unconscionability of the separation agreement, its judgment rests on its conclusion that a fraud was committed upon the court which justified setting aside the property settlement agreement and reopening the dissolution decree. Therefore, our analysis must focus on whether the court properly reached this conclusion.

This Court has made clear that fraud upon the court is "that species of fraud which does or attempts to subvert the integrity of the court itself." *Brown v. Small* (1992), 251 Mont. 414, 421, 825 P.2d 1209, 1213 (citing *Salway v. Arkava* (1985), 215 Mont. 135, 695 P.2d 1302). Such fraud has been construed to include only the most egregious conduct, such as bribery of a judge or member of the jury, evidence fabrication, and improper attempts to influence the court by counsel. *Brown*, 825 P.2d at 1213; *Filler v. Richland County* (1991), 247 Mont. 285, 289, 806 P.2d 537, 539. Generally, fraud between the parties, without more, does not rise to the level of fraud upon the court. *Brown*, 825 P.2d at 1213.

In this instance, the District Court found that there had been no disclosure of the existence of the pension plan at the time of the dissolution proceedings, and concluded that this absence of

8

evidence constituted "however unwittingly, the commission of an extrinsic fraud upon that Court." It concluded that the fraud resulted not from an affirmative misrepresentation by either party, but the fact that Marian was under stress and wished to end the marriage without delay.

Although we recognize that the separation agreement was the product of Marian's desire to quickly terminate the marriage and may have resulted in an inequitable distribution of the marital assets, we reiterate that the only basis upon which to set aside this judgment, nearly two years after its entry, is the commission of a fraud upon the court.

After reviewing the record, we conclude that the evidence is insufficient to support the court's determination that there was fraud upon the court. Neither Marian's nor Edwin's conduct rises to a level which is egregious enough to be characterized as fraud upon the court. Even if we disregard the testimony of Edwin and Marian's attorney, as did the District Court, and accept Marian's assertion that she was not advised of the nature of the pension, the record is void of such things as evidence fabrication, bribery, or attempts to improperly influence the court.

The allegations that Edwin told Marian the pension was a personal asset and that she was not advised otherwise by her counsel, would, at most, amount to fraud between the parties. In *Salway*, 695 P.2d 1306, we concluded that a party's fraudulent conduct, "although reprehensible, is not the type of fraud that furnishes grounds on which to vacate the judgment" under the

9

residual clause in Rule 60(b), M.R.Civ.P.  We reach the same conclusion in this case.  Although grounds may have existed for a motion pursuant to Rule 60(b)(3), or for **Marian** to appeal from the judgment in which the dissolution decree was entered, this does not mean that the judgment can now be set aside for the same reason after the time for post-trial motions and appeal has expired.

**Marian** relies on this Court's decision in *In re Marriage Of Madden* (1984), 211 Mont. 237, 683 P.2d 493, for the proposition that the failure to inform the trial court of the value of a pension during a dissolution proceeding constituted an extrinsic fraud on the court, justifying the reopening of a dissolution decree.  However, the facts of that case are dissimilar from the situation presented here.  In *Madden,* we concluded that a property settlement agreement incorporated into the decree was based on "extrinsic fraud" because it failed to disclose the wife's interest in the husband's pension and the fact that she would be liable for a balloon payment on a mortgage.  This holding, however, was based on the fact that the wife took no part in the process of drafting the agreement, did not have independent counsel because the husband assured her that the attorney would represent both of their interests,  and had no knowledge of the pending liability for the balloon payment on the mortgage.   In this  instance,  however,  **Marian** was the party represented by counsel while Edwin was not, and she was the one who drew up the separation agreement with knowledge of the existence of the pension plan.

We conclude that the allegations of fraud relied upon by Marian fall short of what is legally required to vacate a final judgment pursuant to the residual clause in Rule 60(b). Therefore, we hold that the District Court erred when it set aside the property settlement agreement and reopened the dissolution proceedings.

Edwin contends that he is entitled to an award of attorney fees for prevailing on appeal of the District Court's judgment. This contention is based on the following language in the property settlement agreement which was agreed upon by the parties:

> In the event that either party brings legal action to interpret or enforce any of the terms or provisions of this Agreement, the prevailing party in said legal action is entitled to recover, as a part of their costs and disbursements, such sum as the Court may find reasonable as attorney fees in said controversy.

Marian's cause of action, based on allegations of fraud upon the court, was not an action to "interpret or enforce" the provisions of the agreement. Therefore, we conclude that the attorney fee provision of the separation agreement is not applicable in this proceeding, and hold that neither party is entitled to an award of attorney fees based on that provision.

The October 30, 1992, judgment of the District Court is reversed.

_____
Justice

We concur:

_William E. Hunter_

_Karla M. Gray_

_[signature]_

_[signature]_
Justices

12

November 2, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


James C. Bartlett
HASH, O'BRIEN & BARTLETT
P.O. Box 1178
Kalispell, MT 59903-l 178

Donald E. Hedman
HEDMAN, HILEMAN & LaCOSTA
433 Second Street
Whitefish, MT 59937


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy