No. 93-355

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

PATRICIA HALSE NORDBERG,
n.k.a. PATRICIA HALSE,

　　　　Petitioner, Appellant,
　　　　and Cross-Respondent,

　　and

DEAN V. NORDBERG,

　　　　Respondent, Respondent,
　　　　and Cross-Appellant.

FILED

JUN 2 1 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:　District Court of the Fifth Judicial District,
　　　　　　　　In and for the County of Madison,
　　　　　　　　The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Bonnie Swandal and Brenda R. Cole, Swandal,
　　　　　　Douglass, Frazier & Cole, Livingston, Montana

　　　　For Respondent:

　　　　　　W. G. Gilbert, Jr., and W. G. Gilbert, III,
　　　　　　Attorneys at Law, Dillon, Montana

Submitted on Briefs:　March 24, 1994

Decided:　June 21, 1994

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Patricia Halse Nordberg appeals from final judgment and decree entered June 29, 1993, in the Fifth Judicial District, Madison County, dissolving her marriage to Dean Nordberg and dividing the marital estate. Respondent cross-appeals the District Court's division of the marital estate.

We affirm in part, reverse in part, and remand.

Appellant raises the following issues on appeal:

1. Did the District Court err in declaring the judgment from the dissolution of the parties' first marriage "null and void" where the judgment required periodic installment payments from respondent to appellant for her interest in the ranch assets acquired during the parties' first marriage?

2. Did the trial court err in failing to compensate appellant for her interest in the parties' ranching operation developed during their second marriage?

Respondent's issue on cross-appeal is:

Did the District Court err in its valuation and distribution of the marital estate?

Patricia Halse Nordberg (now known as Patricia Halse) and Dean Nordberg were first married on May 5, 1981, in Sheridan, Montana. Prior to the time the parties married, Patricia was a homemaker and Dean was an ironworker. He later worked in cattle operations. No children were born of this marriage, although both parties have adult children from other marriages. Patricia was formerly widowed and brought the following assets to the first marriage: a family

business, a homestead with a house and 19 acres, bonds from inheritance, life insurance proceeds, and various properties. Dean's assets consisted of gold coins and personal property, and part ownership of a home. During this marriage the parties accumulated real property and livestock, farm and ranching equipment, and machinery. At the time of the present dispute, Patricia was 59 years of age and worked part-time at a sewing shop, and Dean was 58 years of age and operated his ranching business.

On April 21, 1987, with each party represented by their own attorney, the marriage was dissolved and the parties' submitted property settlement agreement was incorporated into the final decree. The settlement granted the couple all property individually acquired before the marriage. Patricia received the two rental properties acquired during the marriage. Dean was granted the livestock, valued at $75,320, and ranch vehicles, equipment, tools, and machinery, valued at $39,800. As part of the property settlement of the cattle and machinery, Dean agreed to pay to Patricia $80,000 as full settlement of her claim to the property. Pursuant to the terms of the agreement, Dean paid $30,000 upon execution of the agreement. Dean was to pay the remaining $50,000 in the following manner: the first installment of $25,000 was due one year from the agreement date, and the second installment of $20,000 was due two years from the agreement date; Dean was to execute two promissory notes for $10,000, with one note having a security interest in Dean's cattle, and the other secured by a title lien interest in his two pickups; and an additional

3

$5,000 certificate of deposit was due two years from the agreement date. Dean never executed the documents nor did he pay the installment payments.

The parties were remarried approximately seven months later on September 30, 1987. This subsequent marriage was dissolved on June 29, 1993. During this second marriage the couple obtained rental property and purchased more cattle. Patricia contributed her separately-owned real property for running the ranching operation and infrequently participated in the operation during this marriage. Dean maintained and managed the ranching operation.

On April 13, 1992, Patricia filed for dissolution of her marriage to Dean. The parties' relationship during the dissolution proceedings was hostile and both disputed the distribution of the assets. On April 21, 1992, prior to the entry of the final decree, Dean sold 52 cow/calf pairs. In June 1992, the court ordered the proceeds of the sale divided equally between the parties and granted $58,940 to each.

After the matter was heard before a Special Master on December 28-29, 1992, the Special Master issued findings of fact and conclusions of law. Both parties filed objections to these findings which were denied. On June 29, 1993, the District Court issued a judgment confirming the Special Master's findings, denying the parties' objections, and declaring the February 3, 1987, judgment from the prior dissolution decree "null and void." Patricia appeals the District Court's findings distributing the

4

property and voiding the prior dissolution judgment, and Dean cross-appeals the division of the marital estate.

ISSUE 1

Did the District Court err in declaring the judgment from the dissolution of the parties' first marriage "null and void" where the judgment required periodic installment payments from respondent to appellant for her interest in the ranch assets acquired during the parties' first marriage?

The first dissolution settlement agreement between the parties granted Dean the livestock and ranch vehicles, equipment, tools, and machinery. As part of the property settlement of the cattle and machinery, Dean agreed to pay to Patricia $80,000 as full settlement of her claim to the property. Dean paid $30,000 upon execution of the agreement. The remaining installments were never paid. Dean argues that the judgment from the prior dissolution settlement for the ranching operation was satisfied by his payments for property taxes on Patricia's separate properties, by his payments for the parties' income taxes, and also, by his contribution of physical labor to improve her separate property.

Unlike the first dissolution where the parties entered into a settlement agreement, they agreed that a Special Master would assist in the proceedings for division of the marital estate for the second dissolution. The District Court adopted the Special Master's findings. In Finding of Fact No. 7, the court states:

> Neither party has performed or complied with the terms of the prior Property Settlement Agreement and Decree. The Court finds that both parties are estopped from asserting any rights under the previous decree and agreement. Both

5

parties should be discharged from any obligation under that judgment.

In the judgment, the court further stated that "[t]he previous decree in Madison County Cause No. 7449 entered between these parties is declared null and void."

Prior to the time a property settlement is approved and merged into a decree, § 40-4-201, MCA, allows the court to determine whether the agreement is unconscionable. In Hadford v. Hadford (1981), 194 Mont. 518, 523, 633 P.2d 1181, 1184, this Court stated:

> Under section 40-4-201(2), MCA, the courts are bound by a property settlement agreement signed by both parties unless the court then finds the agreement to be unconscionable. Under this statute, the court can determine the question of conscionability on its own motion, or either of the parties can raise this issue before the agreement is merged into a decree and becomes final. [Emphasis added].

After the trial court determines that the property settlement is not unconscionable, § 40-4-201, MCA, provides in part:

> (4)(a) unless the separation agreement provides to the contrary, its terms shall be set forth in the decree of dissolution . . . and the parties shall be ordered to perform them; or
>
> . . . .
>
> (5) Terms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms.

In the present case, the trial court found the parties' settlement agreement was not unconscionable and the settlement was merged into the dissolution decree. The judgment became final when no appeal was taken by either party before the appeal time expired under Rule 5, M.R.App.P.

In order to modify or revoke a final property disposition, § 40-4-208, MCA, requires in pertinent part:

> (3) The provisions as to property disposition may not be revoked or modified by a court, except:
> (a) upon written consent of the parties; or
> (b) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state. [Emphasis added].

Rule 60(b), M.R.Civ.P., upon motion by a party or a party's legal representative, for several enumerated reasons, allows relief from a final order, judgment, or proceeding. Since neither party filed a motion for relief in this matter, we consider the residual clause of Rule 60(b) which allows the filing of an independent action based on equitable grounds, stating in pertinent part:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court.

Those parties requesting relief under the 60(b) residual clause may base their claim upon extrinsic fraud, lack of personal notification, and fraud upon the court. Brown v. Small (1992), 251 Mont. 414, 420, 825 P.2d 1209, 1213 (citing Salway v. Arkava (1985), 215 Mont. 135, 695 P.2d 1302). However, here, neither party sought to modify or revoke the original property settlement and decree under § 40-4-208, MCA, nor did either party seek to reopen the judgment under Rule 60(b), M.R.Civ.P. Pursuant to § 40-4-208, MCA, the court could not thereafter sua sponte vacate the judgment without the consent of the parties in writing or without a hearing. This property settlement was not merged into

7

the second marriage, and according to the record, Dean still owes for this judgment. Those assets from the judgment are Patricia's separate assets.

The District Court did not have jurisdiction to vacate the prior judgment. We need not discuss whether the court was justified to vacate the judgment based upon equitable estoppel. We hold that the District Court erred in declaring the judgment from the dissolution of the parties' first marriage "null and void."

## ISSUE 2

Did the trial court err in failing to compensate appellant for her interest in the parties' ranching operation developed during their second marriage?

Patricia argues that she was not compensated for her contribution to the ranching operation and that Dean received more than a majority of the marital assets resulting in an inequitable distribution. She asserts that she contributed the greater portion to the parties' assets by her large financial contributions during the first marriage when she spent $90,919 of her separate funds to establish the ranching operation. She also argues that she made the following additional contributions during the second marriage without receiving her interest from the ranching operation: the contribution of $19,375 of her own separate funds to purchase additional cattle; the contribution of her separate real property for cattle grazing; and the financial contribution for all the parties' personal living expenses and most of the property taxes and insurance.

8

Dean argues that because the judgment from the prior dissolution settlement for the ranching operation was satisfied as argued in the first issue, she received all her interest in the ranching operation from the first marriage. He also maintains that she made minimal contributions to the ranching operation during the second marriage and he made the greater contribution. He contends that although the District Court granted him the ranching operation, it fashioned an equitable distribution by adjusting all the marital assets between the parties, awarding her an interest in all the marital property, including the ranching operation, when it granted Patricia the rental properties and ring.

Distribution of the marital estate is determined by the guidelines in § 40-4-202(1), MCA, which provides in part:

> In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.

This statute grants the district court broad discretion to apportion the marital estate equitably to each party under the circumstances. In re Marriage of Zander (Mont. 1993), 864 P.2d 1225, 1230, 50 St. Rep. 1522, 1524.

Our review of marital property divisions is whether the district court's findings of fact are clearly erroneous. In re Marriage of Maedje (1994), 868 P.2d 580, 583, 51 St. Rep. 47, 48 (citing In re Marriage of McLean/Fleury (1993), 257 Mont. 55, 849 P.2d 1012). If substantial credible evidence supports the court's findings and judgment, this Court will uphold the district court's

9

decision unless there is an abuse of discretion. Maedje, 868 P.2d at 583. In the distribution of assets, the District Court upheld the order granting Patricia one-half the total received for the interim sale of cattle of $59,940. She received real property totaling $75,830, a diamond ring valued at $25,000, and debts totaling $13,500, with a net total of $147,270. She also received a myriad of personal properties and the following separate property inherited or owned prior to either marriage to Dean: a family business; several properties with large amounts of acreage; real properties and leases; rental properties; checking and savings accounts; an insurance annuity policy; various investment interests; several gold kruggerands, maple leafs, and ingots; and stock.

The court upheld the $59,940 distribution to Dean for the one-half interest in the interim sale of cattle, and granted him the ranching operation valued at $130,075 and debts associated with the operation totaling $35,624.24, along with the $5,500 debt associated with the diamond ring awarded to Patricia, giving a net total of $148,890.76. He also received miscellaneous personal property.

The record shows that the District Court properly considered the statutory requirements within § 40-4-202, MCA. The Special Master, in the memorandum in support of findings, stated:

> The Court recognizes that the division of the marital estate is not equal in this matter. Respondent has received a slight majority of the marital estate. This finding is justified by the equities in this action when considering PATRICIA'S extensive separate properties and

10

DEAN'S relative lack thereof. It is in the Court's discretion to divide the property in this matter.

Before distributing the marital property the court determined the value of the marital properties and debts, and found that the parties contributed to the marital assets either in the form of money or labor and management decisions. The court determined the contributions to be of equal value. The court also properly considered the source of the parties' assets. In her argument that she should receive an interest in the ranching operation because she invested her separate assets in the operation, Patricia attempts to lump together all the monetary contributions she made during the parties' first marriage and second marriage. As discussed above in the first issue, the marital assets in the first marriage were settled by the parties' agreement. In the second dissolution, the District Court properly determined that the marital assets acquired only during the second marriage were to be considered marital assets.

Patricia argues that In re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361, supports her argument that she should receive an interest in the ranch. In Brown, the husband received by inheritance the family ranch valued at $350,000 - $450,000. The District Court awarded the wife $25,000 as her interest in the ranch. This Court held that the award to the wife was an inequitable division of the marital estate given that the length of the marriage was 14 years, that the ranch was the whole of the marital estate, and that the appreciation of the ranch's value was due to both parties' efforts. However, in the present case, the

11

ranching operation does not constitute the entire marital estate, as was the case in Brown. After finding that the parties' contributions to the marital properties were equal, the court then moved on to distribute all of the marital property in an equitable manner. Patricia received the parties' two real estate rental properties and the diamond ring, plus numerous personal property and her own separate property. Dean received the ranching operation and personal property.

The rule is settled that an equitable distribution does not require a 50/50 distribution of the marital assets. In re Marriage of Bowman (1987), 226 Mont. 99, 734 P.2d 197. It is equity, not equality that guides a court's discretion in dividing the marital estate. In re Marriage of Fitzmorris (1987), 229 Mont. 96, 745 P.2d 353. We find that substantial credible evidence supports the findings, and the District Court did not abuse its discretion by awarding the ranching operation to Dean.

### ISSUE 3

Did the District Court err in its valuation and distribution of the marital estate?

Dean argues that the District Court erred by not computing the net worth of the parties before distributing the marital property pursuant to § 40-4-202, MCA.

After the Special Master issued the findings concerning the division of assets, Dean did not object to the absence of net worth, but only objected to personal property he did not receive. This Court will not find error in a district court's ruling or

12

procedure where the appellant acquiesced, participated, or did not object. In re Marriage of Smith (1990), 242 Mont. 495, 501, 791 P.2d 1373, 1377. Moreover, an exact net worth finding is not required when the relevant factors are considered and adequately set forth by the court. In re Marriage of Skinner (1989), 240 Mont. 299, 304, 783 P.2d 1350, 1353 (quoting In re Marriage of Hunter (1982), 196 Mont. 235, 245, 639 P.2d 489, 494). Our review of the court's findings reveals that the total marital estate value was $350,785, debts totaled $54,624.24, leaving a net worth of $296,160.76.

Dean also argues that Patricia's property was undervalued and much of her property was improperly omitted from the marital estate. After the time for discovery was over, the Special Master denied Dean's motion for production of documents, stating that the motion was untimely, and that the parties had been granted ample time for discovery and raising the new issues at the close of evidence would necessitate an unwarranted continuance of the hearing. Further, the court addressed the substance of the motion stating that the evidence was clear and convincing that Halse Enterprises was Patricia's separate asset and that Dean did not facilitate the maintenance of the asset. Those assets belonging to a spouse prior to a marriage, or acquired by gift, bequest, devise, or descent during the marriage are not part of the marital estate unless the spouse made contributions in the preservation or interest in that property. In re Marriage of Smith (Mont. 1994), 871 P.2d 884, 51 St. Rep. 277.

13

We affirm the District Court's valuation and distribution of the marital assets. We reverse and remand to the District Court to reinstate the prior judgment and for further proceedings to determine the balance owed to Patricia from the judgment.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

14

June 21, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Brenda Riley Cole, Esq.
Swandal, Douglass, Frazier & Cole
206 E. Callender
Livingston, MT 59047

W.G. GILBERT, JR.
W.G. GILBERT, III
Attorneys at Law
P.O. Box 345
Dillon, MT 59725-0345

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy