No. 94-495

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

WILLIAM R. HAMILTON,

      Petitioner and Respondent,

  and

KATHLEEN D. HAMILTON,

      Respondent and Appellant.

FILED

FEB 14 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

        Paula Johnson-Martin, Attorney at Law,
        Whitefish, Montana

      For Respondent:

        Bruce McEvoy; Warden Christiansen, Johnson & Berg,
        Kalispell, Montana


Submitted on Briefs: January 12, 1995

Decided: February 14, 1995

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Kathleen D. Hamilton (Kathleen) appeals from the findings of fact, conclusions of law, and decree entered in the Eleventh Judicial District Court, Flathead County, dissolving her marriage to William R. Hamilton (William). We affirm.

The issue Kathleen presents is essentially: whether the District Court erred in its distribution of property.

On January 29, 1984, just prior to their marriage, Kathleen and William signed an antenuptial agreement. The agreement was prepared by William. Neither party was represented by an attorney in the preparation or signing of the document. The agreement stated that William's trust fund (worth between $400,000 and $500,000) , pickup truck, and boat would all remain his separate property. The agreement stated that Kathleen's car would remain her separate property. It also contained a mutual waiver of spousal support, and an agreement to split marital debts equally between the parties.

William's trust fund was established after William's father died in 1972. William's mother was the primary beneficiary and William was the secondary beneficiary. After his mother's death, in 1991, William became the sole trust beneficiary. Kathleen and William were married on February 14, 1984 in Monterey County, California.

Shortly after their marriage, the parties moved to Whitefish,

2

Montana.  When the parties first moved to Whitefish, William seldom worked, but as years passed he worked an increasing amount. Kathleen worked full time as a licensed practical nurse after arriving in Whitefish, and attempted to work full time throughout the marriage.

William's mother lived with the parties for a few years before they became concerned that they could not give her the care she required.  While his mother was alive, William had liberal powers to draw on the trust.  He did so to provide for his mother's care, and for the benefit of both himself and Kathleen.  The parties lived off their incomes and money generated by the trust fund.

On June 26, 1992, William filed a petition for dissolution. In the petition, William alleged that the antenuptial agreement equitably divided the parties' property mentioned in the agreement, and requested an equitable division of property accumulated during the marriage.  On September 17, 1992, Kathleen filed her response in which she denied that the antenuptial agreement was valid and binding.  She requested an equitable division of all marital property.  On February 16, 1993, Kathleen filed an amended response to William's petition.  She included a request for spousal support which was not included in her original response.

William moved for partial summary judgment on December 21, 1992.  He asked the court to determine that the property mentioned in the antenuptial agreement be distributed in accordance with the agreement.  On May 12, 1993, the court denied William's motion on

the basis that the antenuptial agreement was signed in 1984 and Montana did not adopt the Uniform Premarital Agreement Act until 1987. Instead, the court held that the antenuptial agreement, if conscionable, was only one factor to consider in the distribution of marital property.

The court held a hearing on the dissolution on September 13, 1993. On July 11, 1994, the court entered its findings of fact, conclusions of law, and decree. The court found that it was equitable to return to William his remaining pre-marital properties, inherited properties, and properties traceable to the trust. After the parties separated but prior to the entry of dissolution, Kathleen had received $18,000 from a joint bank account and an account containing the proceeds from the sale of the Whitefish home. The court allowed her to retain this money. In addition, the court awarded Kathleen a car paid for by trust monies as a replacement for her car that was mentioned in the antenuptial agreement. The court made William and Kathleen responsible for credit card debt of $7,000 and $4,600 respectively. It also denied Kathleen's claim for spousal support as she was able to support herself through appropriate employment. Kathleen appeals.

The sole issue we consider on appeal is whether the District Court erred in distributing the marital estate.

We review divisions of marital property to determine whether the district court's findings of fact are clearly erroneous. In re Marriage of Nordberg (1994), 265 Mont. 352, 358, 877 P.2d 987, 991

4

(citations omitted).  Absent an abuse of discretion, this Court will uphold the district court's decision if substantial credible evidence supports the court's findings and judgment.  Marriage of Nordberg, 877 P.2d at 991.

Kathleen specifically contends that the District Court erred by only allowing her to retain $10,000 of the proceeds from the sale of their Whitefish home, and $8,000 she received from a joint account.  We disagree.

> Section 40-4-202(1), MCA, states in relevant part:
>
> In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

We have stated that "[t]hose assets belonging to a spouse prior to a marriage, or acquired by gift, bequest, devise, or descent during the marriage are not part of the marital estate unless the [other] spouse made contributions in the preservation or interest in that property."  Marriage of Nordberg, 877 P.2d at 992; citing In re Marriage of Smith (1994), 264 Mont. 306, 871 P.2d 884

The Whitefish home was purchased with monies traceable to the trust.  The Whitefish home sold for about $269,000; about $70,000 of which was gain.  Kathleen testified that her father helped out

where he could in the construction of the house and that she and her mother cleaned up after the construction crew on weekends and did other odds and ends. The District Court found that Kathleen had contributed somewhat to the construction and maintenance of the home. It found that the $10,000 she received from the proceeds from the sale of the home was sufficient compensation for her efforts toward the home. We hold that substantial credible evidence exists to support the District Court's finding and award.

The joint account contained stock originally owned by the trust. William liquidated some of the stock to pay marital debts and other expenses. At the time of dissolution, the account contained cash and stocks worth approximately $35,500. The District Court found that Kathleen had not contributed to the account. Kathleen received $8,000 **from** the account prior to the dissolution. The court allowed Kathleen to retain the $8,000. The court also found that the assets remaining in the account were premarital and inherited property which would be returned to William.

There is sufficient evidence in the record to support findings that Kathleen did not contribute to the joint account, and that any actions she took which helped maintain the account were sufficiently compensated when she received $8,000 from the account.

We hold that the District Court sufficiently considered the factors listed in § 40-4-202(1), MCA, and did not abuse its discretion in distributing the marital estate. Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_W. William Burghart_
Justice/

We concur:

_Karla M. Gray_

_William E. Hunt_

_[signature]_

_Jim Trieweiler_
Justices

February 14, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Paula Johnson-Martin
Attorney at Law
6336 Highway 93 So.
Whitefish, MT 59937

Bruce McEvoy, Esq.
Warden, Christiansen, Johnson & Berg
P.O. Box 3038
Kalispell, MT 59903-3038

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy