No.   92-179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

JIM J. OLTERSDORF,

      Petitioner and Appellant,

  and

JOAN ARLENE OLTERSDORF,

      Respondent and Respondent.

FILED

DEC 24 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable John S. Henson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Howard C. Greenwood, Hamilton, Montana

      For Respondent:

      Lori Ballinger and Paulette C. Ferguson,
Missoula, Montana

Submitted on Briefs:  December 3, 1992

Decided:  December 24, 1992

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Jim Oltersdorf appeals an order of the Fourth Judicial District Court, Ravalli County, setting aside its previous order determining child custody and child support in this dissolution of the marriage of Jim and Joan Oltersdorf. We affirm.

The determinative issue is whether the District Court had jurisdiction over the question of child custody.

In May 1990, Jim Oltersdorf filed with the District Court for Ravalli County, Montana, a petition for dissolution of his marriage to Joan Oltersdorf. In the petition, he stated that he had been a Montana resident for more than ninety days and that Joan resided in San Bernardino, California. Jim stated that two children, Sasha and Joalena, had been born to the parties and that Sasha was in his care and custody and Joalena was in the care and custody of Joan. During the time at issue in this case, Sasha was an elementary school student and Joalena was a preschooler.

Joan acknowledged receipt of the summons and petition pursuant to Rule 4(D)(1)(b), M.R.Civ.P. The court ruled upon a motion concerning visitation before it entered the final decree of dissolution in October 1991. In the decree, the court noted that Joan had not appeared either personally or by counsel at trial. Although Jim had asked in his petition that he be awarded custody of Sasha and Joan be awarded custody of Joalena, the court awarded custody of both Sasha and Joalena to Jim.

2

In December 1991, Joan, through her counsel, moved under Rules 55(c) and 60(b), M.R.Civ.P., to set aside the October 1991 judgment. After a hearing, the court granted the motion to set aside its custody determination regarding Joalena, on the basis of lack of notice to Joan. The court also ruled that it lacked jurisdiction to determine custody of either of the children. In order to restore the parties to their positions before the October 1991 order was entered, the court ordered that custody of both girls be immediately returned to Joan.

Did the District Court have jurisdiction over the question of child custody?

Jim claims that the District Court had jurisdiction over child custody because a dissolution had been filed in the court, Joan had consented to jurisdiction by voluntarily appearing through counsel, and the court had already exercised child custody jurisdiction by ruling on a motion concerning visitation. But jurisdiction over a dissolution of marriage does not necessarily confer jurisdiction over child custody issues involved therein. E.g., In re Marriage of Brown (1985), 218 Mont. 14, 706 P.2d 116; compare §§ 40-4-104 and 40-4-211, MCA. Also, the court did not acquire jurisdiction by virtue of its previous rulings on motions concerning visitation, because a court does not acquire subject matter jurisdiction merely by ruling on a matter. The issue of subject matter jurisdiction

3

may be invoked at any time in the course of a proceeding. In re Marriage of Lance (1984), 213 Mont. 182, 186, 690 P.2d 979, 981.

Section 40-4-211, MCA, provides:

(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) this state:
(i) is the home state of the child at the time of commencement of the proceedings; or
(ii) had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because:
(i) the child and his parents or the child and at least one contestant have a significant connection with this state; and
(ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state and:
(i) has been abandoned; or
(ii) it is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

(d) (i) no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) of this section or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and
(ii) it is in his best interest that the court assume jurisdiction.

One of the four disjunctive requirements set forth above must be met before a court may make a custody determination.

4

The record indicates that until Jim and Joan separated, Sasha and Joalena lived with both parents in California. In February 1988, Joan, Sasha, and Joalena moved to Canada. In December 1989, Sasha traveled to visit Jim in Montana, where he had by then relocated. She stayed until June 1990, when she joined Joan and Joalena, who had moved back to California. When Jim filed his petition for dissolution in May 1990, Sasha had lived with him in Montana for a little over four months and Joalena had never lived in Montana.

Neither Sasha nor Joalena had lived in Montana for six months prior to Jim's filing of the petition for dissolution. Therefore, Montana was not the "home state" under part (a) of § 40-4-211(1), MCA. "Home state" is defined at § 40-7-103(5), MCA, for purposes of both the Uniform Child Custody Jurisdiction Act, Title 40, Chapter 7, MCA, and the Uniform Marriage and Divorce Act, Title 40, Chapter 4, MCA, as the state in which the child lived for the preceding six months.

In the order setting aside its previous custody order, the District Court reasoned as follows concerning the requirements of parts (b), (c), and (d) of § 40-4-211(1), MCA:

> Subsection (b) of 40-4-211(1) confers jurisdiction if such jurisdiction is in the child's best interest because:
>
> (i) the child and his parents or the child and at least one contestant have a significant connection with this state; and ii) there is available in this state substan-

5

tial evidence concerning the child's present or future care, protection, training, and personal relationships . . .

This prerequisite is drafted in the present tense. Therefore, the Court shall determine if it was proper to assume jurisdiction on the date of October 3, 1991 based on the facts and circumstances as they existed on that date. According to Petitioner's affidavit filed July 17, 1990, the Petitioner had resided in Montana since September of 1989. Petitioner testified that he travelled to California and remained there during part of February and March of 1991. While in California, Petitioner lived with Respondent for a portion of that time, and researched employment opportunities. As of October 3, 1991, Joalena had been living with Respondent in California since March, 1990, a period of roughly one and one-half years. In addition, Sasha had been living with Respondent and attending school in California since June 5, 1990, a period of roughly one year and four months. According to these facts, neither child had a significant connection in Montana at the time of the October 3, 1991 hearing so as to allow this Court to assume jurisdiction to make a child custody determination of either child. Likewise, § 40-4-211(c) or (d) does not confer jurisdiction in Montana. Rather, the facts and circumstances establish a sufficient nexus between the minor children and the State of California so as to confer jurisdiction in that State. Therefore, aside from the fact that the Respondent lacked notice regarding the child custody determination of Joalena, jurisdiction did not lie in Montana for this Court to make the subject child custody determinations regarding either child.

We agree with the District Court's analysis concerning jurisdiction. We hold that the court did not err in concluding it did not have jurisdiction to determine custody of Sasha or Joalena.

Jim also argues that a Rule 60(b), M.R.Civ.P., motion may not be used to set aside an order based on lack of jurisdiction. Rule 60(b)(6), M.R.Civ.P., allows a judgment to be set aside for "any

6

other reason justifying relief from the operation of the judgment." That language is clearly broad enough to include lack of jurisdiction.

Because we hold that the District Court did not have jurisdiction to determine child custody, we need not address the issue of whether Joan was given adequate notice of the custody proceeding concerning Joalena.

Affirmed.


_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

7

December 24, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Howard C. Greenwood
Attorney at Law
P.O. Box 1567
Hamilton, MT   59840

Lori Ballinger & Paulette C. Ferguson
Attorneys at Law
210 N. Higgins, Ste. 302
Missoula, MT   59802


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
       Deputy