No. 95-083

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DON FALCON and BERTA FALCON,
husband and wife, d/b/a
THE EL LEO PARTNERSHIP,

      Plaintiff and Respondent,

  v.

ALLEN E. FAULKNER, d/b/a,
FAULKNER QUARTER HORSES and
RON THOMAS as agent/employee of
FAULKNER QUARTER HORSES,

      Defendant and Appellant.



FILED

SEP 29 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Jeffrey M. Murray, Murray Law Firm, Kalispell,
            Montana

      For Respondent:

            Mark Stermitz, Kent P. Saxby, Warden, Christiansen,
            Johnson & Berg, Kalispell, Montana

Submitted on Briefs:  July 28, 1995

Decided:  September 29, 1995

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant Ron Thomas appeals the decision of the Eleventh Judicial District Court, Flathead County, denying his motion to set aside a default judgment. We affirm.

The following issues are raised on appeal:

1. Did the District Court err in failing to find that respondent Falcon had committed fraud upon the court?

2. Did the District Court err in failing to find sufficient "other reasons" existed to warrant setting aside the default judgment?

FACTS

Respondent Don Falcon, a Montana resident, is a quarter horse breeder and the owner of a show mare named "First El Leo." Appellant Allen Faulkner, an Oklahoma resident, is also a quarter horse breeder and the owner of a show stallion named "Impressive." In the mid-1980's, Appellant Ron Thomas, an Illinois resident, bought from Faulkner a number of "breeding contracts," each of which gave the owner of the contract the right to breed a mare to Impressive.

In the early spring of 1986, Thomas assigned a breeding contract to Falcon for $5,000. The parties dispute whether the contract guaranteed the live birth of a foal, but agree the contract provided the owner would have the right to breed his mare to Impressive again the following year should a live foal not result from the first breeding. The parties also dispute how payment on the contract was arranged. Falcon alleged he and Thomas

2

had agreed Thomas would receive $2,500 up front and the balance once First El Leo was pregnant. Thomas alleged he made it clear he expected to be paid the entire amount in advance.

First El Leo was bred to Impressive in 1986, but no pregnancy resulted. In 1987, Falcon transported First El Leo back to Oklahoma to attempt to breed her to Impressive again. On Thomas' orders, Faulkner refused to allow the breeding because Falcon had not paid the breeding contract in full. Falcon refused to pay and no second breeding took place. Falcon took First El Leo back to Montana and successfully bred her to another stallion later that year.

In late 1987, Thomas filed suit against Falcon in Illinois for breach of contract. This suit was subsequently dismissed by the Illinois court for lack of personal jurisdiction over Falcon. In January 1988, Falcon filed suit in Montana against Faulkner and Thomas for breach of contract, and Thomas was duly served with process on the lawsuit. On the advice of his attorney, who believed Montana lacked personal jurisdiction over him, Thomas failed to answer the complaint or to appear in the suit.

Because Thomas failed to appear, his default was entered in February 1988. In January 1989, Falcon requested and received a default judgment against Thomas in the amount of $131,010.80. In 1990, Falcon petitioned an Illinois court for registration of the default judgment. Thomas opposed the petition, arguing the Montana court lacked personal jurisdiction over him and the judgment was therefore void. The Illinois court found Thomas had the requisite

3

minimum contacts in Montana to establish personal jurisdiction, and the default judgment was duly registered in Illinois. This decision was affirmed by the Illinois appellate court.

Falcon also filed a separate action in Illinois alleging Thomas had fraudulently conveyed certain real property to his sons for the purpose of avoiding payment of the Montana judgment. The Illinois court found the property had indeed been fraudulently conveyed, and the property transfers were set aside. Thomas again appealed, and the Illinois appellate court affirmed the judgment in February 1994.

In May 1994, Thomas moved the Montana court to set aside the default judgment. Thomas alleged that Falcon had committed fraud upon the court and that other sound reasons existed to set the default aside. The District Court refused to set aside the default judgment, and Thomas appeals.

Rule 60(b), M.R.Civ.P., provides that a default judgment may be set aside for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

4

Rule 60(b), M.R.Civ.P. However, Rule 60(b) also provides that a motion made under subsections (1), (2), or (3) must be made within 60 days after the entry of judgment. Thomas' motion to set aside the default judgment was made over five years after the default judgment was entered against him. Any claim arising under subsections (1), (2), or (3) is therefore time-barred. Since Thomas does not allege the judgment is void or has been satisfied, his motion arises from subsection (6)--other reasons exist which justify setting the judgment aside. In addition, the residual clause of Rule 60(b) allows a judgment to be set aside at any time if a party has perpetrated a fraud upon the court, which Thomas alleges Falcon has done.

## STANDARD OF REVIEW

This Court will carefully scrutinize a district court's refusal to set aside a default. Because of the sound policy favoring trial on the merits, "no great abuse of discretion need be shown to warrant reversal." Lords v. Newman (1984), 212 Mont. 359, 364, 688 P.2d 290, 293 (citations omitted). If this Court finds even a slight abuse of discretion, the district court will be reversed and the default will be set aside. Lords, 688 P.2d at 293. See also In re Marriage of McDonald (1993), 261 Mont. 466, 469, 863 P.2d 401, 402; Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 467, 701 P.2d 784, 785. However, "the burden of proof rests on the party seeking to set aside the default judgment." Empire Lath & Plaster, Inc. v. American Casualty Co. of

Reading, Pennsylvania (1993), 256 Mont. 413, 416, 847 P.2d 276, 278.

## Issue 1

Did the District Court err in failing to find that respondent Falcon had committed fraud upon the court?

Thomas alleges Falcon intentionally misrepresented material facts to the court. Specifically, Thomas contends Falcon misrepresented that:

1) his mare failed to have a foal subsequent to the 1987 breeding season;

2) he fully performed all obligations under the contract; and

3) the value of the lost foal was $100,000.

Thomas contends that these alleged misrepresentations amount to a fraud upon the court, and that the default decree should therefore be set aside under the residual clause of Rule 60, M.R.Civ.P.

"The residual clause of Rule 60 by its terms sets forth three separate avenues to obtain relief from judgment." Salway v. Arkava (1985), 215 Mont. 135, 140, 695 P.2d 1302, 1305. These avenues are extrinsic fraud, lack of personal notification, and fraud upon the court. Brown v. Small (1992), 251 Mont. 414, 420, 825 P.2d 1209, 1213, citing Salway, supra. In this case, Thomas alleges Falcon committed fraud upon the court.

> Fraud upon the court should, we believe, embrace only that species of fraud which does or attempts to subvert the integrity of the court itself, or is fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner in its impartial task of adjudicating cases that are presented for adjudication. Relief should be denied in the absence of such conduct.

6

Salway, 695 P.2d at 1306 (citations omitted). See also Wise v. Nirider (1993), 261 Mont. 310, 862 P.2d 1128. "Examples of fraud upon the court include bribery, evidence fabrication, and improper attempts to influence the court by counsel." Brown, 825 P.2d at 1213. Only "the most egregious conduct" will rise to the level of fraud upon the court. Wise, 862 P.2d at 1132. "[I]t must be such fraud as denied the adversary an opportunity to have a trial or to fully present his side of the case" in order to "constitute grounds for reopening the decree." Lance v. Lance (1981), 195 Mont. 176, 179-80, 635 P.2d 571, 574. Intrinsic fraud that is representations or concealments made during the court proceedings, assuming they are false or fraudulent, are nevertheless not grounds for reopening a decree or judgment. Lance, 635 P.2d at 574 (citations omitted).

Thomas alleges Falcon misrepresented certain facts to the court, and those misrepresentations constituted fraud upon the court. But what Thomas terms "misrepresentations" were allegations that would properly have been disputed at trial.

The question of whether First El Leo had a foal in the 1987 season has been settled. Falcon admitted she did (by another stallion), and claimed the allegation she had not was an error brought to the trial court's attention. In any case, the award of damages does not include any amount for a foal lost in 1987.

Whether Falcon fully performed his obligations under the contract is relevant to the issue of breach of contract. Falcon claimed he did; Thomas now claims he did not. The worth of the foal that would have been born if a successful breeding had taken

place is relevant to the issue of damages. Falcon claimed it could have been worth in excess of $100,000; Thomas now claims it would have been worth much less.

In raising these issues, Thomas attempts to argue the merits of the case itself. However, the proper place and time to argue the merits of a case is at trial. Had Thomas appeared in the case and a trial been held, he would have been afforded an opportunity to rebut Falcon's testimony and offer his own evidence regarding the contract and damages. If Thomas had somehow been denied his right to appear at trial and contest the merits of the case, the denial of that right might constitute fraud upon the court. Salway, 695 P.2d at 1306. But, Thomas was not prevented from appearing; he chose not to appear.

The record does not indicate, nor does Thomas allege, that Falcon or his counsel engaged in the sort of egregious conduct that would justify a finding of fraud upon the court. It was not an abuse of discretion for the District Court to refuse to grant Thomas' motion on these grounds.

## Issue 2

Did the District Court err in failing to find sufficient "other reasons" existed to justify setting aside the default judgment?

Rule 60(b)(6), M.R.Civ.P., provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment." Thomas

8

alleges several "other reasons" why the default judgment should be set aside.

Relief is warranted under subsection (6) of Rule 60(b), M.R.Civ.P., "in extraordinary situations when circumstances go beyond those covered by the first five subsections or when a party in whose favor judgment was entered has acted improperly." In re Marriage of Castor (1991), 249 Mont. 495, 500, 817 P.2d 665, 668. "Other reasons" sufficient to set aside a default judgment include lack of subject matter jurisdiction (In re Marriage of Oltersdorf (1992), 256 Mont. 96, 844 P.2d 778), unavoidable absence or unavailability of counsel (Ring v. Hoselton (1982), 197 Mont. 414, 643 P.2d 1165), or potential judicial bias (Schultz v. Hooks (1994), 263 Mont. 234, 867 P.2d 1110).

Thomas first alleges fraud between the parties on the same grounds by which he alleges fraud upon the court. However, false representations made by a party constitute intrinsic fraud and are not reason enough to set aside a default judgment. Lance, 635 P.2d at 574. The intrinsic fraud Thomas alleges is addressed by subsection (3) of Rule 60(b). A party is given 60 days in which to file a motion under subsection (3); Thomas is therefore time-barred from raising this issue.

Thomas next alleges the settlement offer made to him indicates Falcon's damages were inflated. However, settlement offers are not admissible to prove liability for or invalidity of a claim or its amount. Rule 408, M.R.Evid. Furthermore, as stated above, the question of damages is properly decided at trial. Since Thomas did

9

not appear in this action, the District Court awarded damages based on the evidence Falcon presented. A party's desire to retroactively argue a factual issue in the case is not a reason justifying the setting aside of a default.

Thomas also argues the judgment should be set aside because he received no notice of Falcon's intent to enter the default. Rule 55(b), M.R.Civ.P., requires a party who has appeared in an action to be given at least three day's notice of intent to enter a default. However, despite being duly served as a party to the case, Thomas never appeared in the action. Since he never entered an appearance, he was not entitled to specific notice of intent to enter a default. Therefore, Falcon's failure to notify him is not a reason to set aside the default judgment. Lance, 635 P.2d at 575.

Thomas last argues that the negligence of his attorney should be reason enough to set aside the default judgment. Thomas' failure to appear in the Montana action was due to the advice of his Illinois attorney, who incorrectly believed Montana did not have personal jurisdiction over Thomas.

Generally, mistake or neglect fall within subsection (1) of Rule 60(b) and therefore must be alleged within 60 days of the entry of judgment. Further, "[t]he general rule followed in Montana and many other jurisdictions is that the neglect of an attorney is attributable to the client. The attorney's neglect is imputed to the client and is insufficient to set aside a default." Lords, 688 P.2d at 295, citing First State Bank v. Larsen (1925),

10

72 Mont. 400, 233 P. 960. We have found in the past, however, that gross neglect of a diligent client's case may be enough to warrant setting a default judgment aside under subsection (6). Ring, 643 P.2d at 1172.

The advice of Thomas' Illinois attorney, which hindsight reveals was very bad indeed, nevertheless does not rise to the level of gross neglect. He believed Thomas was not subject to Montana jurisdiction, but he was wrong. He did not, however, abandon Thomas mid-way through an action, or misrepresent to Thomas the steps he was taking on Thomas' behalf.

Thomas points out, however, that this attorney did not carry malpractice insurance and is now bankrupt, making him essentially judgment-proof. These circumstances, while unfortunate, are not relevant to the question of whether the default should be set aside. The actions of Thomas' Illinois attorney did not constitute gross neglect. As such, they are not reason enough to set aside the default judgment.

Finally, we note that Thomas waited over five years before moving the court to set aside the judgment, during the first two of which he was actively challenging the validity of the judgment in the Illinois courts. Even after the Illinois appellate court ruled the judgment was valid in 1991, Thomas waited over three years before moving the court to set aside the judgment. Thomas offers no reason for this inexcusable delay.

Since Thomas failed to show fraud upon the court or a valid "other reason" to set aside the default judgment against him, the

11

District Court did not abuse its discretion in denying his motion.

Affirmed.

_William E. Hunt_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_W. William Leaphart_
Justices

12