

DA 10-0372

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 107

IN RE THE MARRIAGE OF:

CHARLENE ORCUTT,

      Petitioner and Appellant,

  and

KELLY ORCUTT,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DR 09-0009
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Michelle R. Lee, Harper Law Firm, Billings, Montana

      For Appellee:

            Kelly Orcutt, self-represented, Glendive, Montana

Submitted on Briefs:  February 16, 2011

Decided:  May 17, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Charlene Orcutt (Charlene) appeals from an order of the Seventh Judicial District Court, Dawson County, denying her Amended M. R. Civ. P. 60(b)(6) Motion to Set Aside and Amend Findings of Fact, Conclusions of Law, and Decree of Dissolution. We reverse.

¶2 Charlene married Kelly Orcutt (Kelly) on July 3, 1984, in Dawson County, Montana. Charlene hired an attorney, Sheila Newman (Ms. Newman), who filed a Petition for Dissolution on May 6, 2009. Kelly also hired an attorney, and responded. A hearing on Charlene's petition was held January 11, 2010, at which both Charlene and Kelly personally appeared with their counsel. Essentially, the only contested issue at the hearing was the valuation and division of Charlene and Kelly's home and surrounding acreage ("marital home"), which was purchased for $45,000 in the mid-1990s.

¶3 On August 4, 2009, Charlene obtained a letter from a realtor stating the marital home could be worth approximately $250,000-$275,000, if the home was in good condition and the "sea of junk vehicles" was removed. Ms. Newman did not disclose the realtor as an expert witness by the District Court's deadline, September 12, 2009. The realtor was not allowed to testify at the hearing (and apparently was not even present), nor could Charlene submit any evidence about the realtor's opinion. Neither party had the marital home appraised. The only evidence about the value of the marital home was the Dawson County Property Tax Notice, indicating a value of $22,423, submitted by Kelly. Ms. Newman did not ask Charlene what she thought the value of the marital home

2

was, nor was any evidence about the value of the marital home introduced by Ms. Newman. The District Court issued its Findings of Fact, Conclusions of Law, and Decree on February 8, 2010, where it "reluctantly" valued the marital home at $22,423.

¶4 Charlene obtained new counsel and filed an Amended Motion to Set Aside Findings of Fact, Conclusions of Law, and Decree on March 16, 2010. Pursuant to M. R. Civ. P. 60(b)(6), Charlene argued that her first attorney, Ms. Newman, grossly neglected her case when she failed to identify the realtor as an expert, or any other qualified real estate expert, and failed to prepare any evidence for trial to reflect Charlene's estimated value of the marital home. A hearing was held on the motion on June 30, 2010, at which both Charlene and Kelly appeared with their counsel. The District Court denied Charlene's motion, finding Charlene failed to 1) provide proof that the realtor would have been qualified to testify as an expert, 2) attempt to call the realtor to testify during trial, 3) present testimony of the cost of cleaning up the marital home, and 4) disclose information about the alleged expert realtor as required by order of the court. Ultimately, the only evidence about the value of the marital home was provided by Kelly, via his testimony and tax records. Charlene appeals from that order.

## STANDARD OF REVIEW

¶5 Our review of a district court's ruling on a motion pursuant to M. R. Civ. P. 60(b) depends on the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the motion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451. Generally, we review the district court's

ruling for an abuse of discretion. *Id*. Exceptions to the general rule include motions made under Rule 60(b)(2), (b)(4), or where relief from a default judgment is sought. *Id*. at ¶¶ 16-17. Given the facts of this case, the abuse of discretion standard applies.

¶6 When the district court refuses to set aside the judgment, only a slight abuse of discretion need be shown. *Skogen v. Murray*, 2007 MT 104, ¶ 11, 337 Mont. 139, 157 P.3d 1143; *Karlen v. Evans*, 276 Mont. 181, 185, 915 P.2d 232, 235 (1996). A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Essex*, ¶ 19.

## DISCUSSION

¶7 *Did the District Court abuse its discretion when it denied Charlene's M. R. Civ. P. 60(b)(6) motion?*

¶8 Charlene argues that Ms. Newman failed to prepare for trial by failing to list the realtor as an expert witness, thereby denying Charlene the ability to present evidence about the value of the marital home. Charlene seeks relief under Rule 60(b)(6).

¶9 M. R. Civ. P. 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

4

¶10    Charlene's motion was based on subsection (6). Relief under this subsection is appropriate only in extraordinary circumstances which go beyond those covered by the first five subsections. *Essex*, ¶ 21. Before a final judgment can be modified under Rule 60(b)(6), it must first be shown that none of the other five subsections apply. *Id*.

¶11    Rule 60(b)(6) is not intended to be a substitute for appeal. *Id*. at ¶ 22. A motion under Rule 60(b)(6) must be more than a request for rehearing, or a request for the district court to change its mind; it must be shown that something prevented a full presentation of the cause or an accurate determination of the merits that for reasons of fairness and equity redress is justified. *Id*.

¶12    A successful Rule 60(b)(6) motion based upon alleged error by a movant's attorney requires that the movant demonstrate each of these three elements: 1) extraordinary circumstances, such as gross neglect or actual misconduct by an attorney; 2) the movant acted to set aside the judgment within a reasonable period of time; and 3) the movant was blameless. *Peak Development, LLP v. Juntunen*, 2005 MT 82, ¶ 17, 326 Mont. 409, 110 P.3d 13 (overruled in part by *Essex*, ¶ 25 n. 4); *Skogen*, ¶ 13.

¶13    As an initial matter, we note that the District Court could have denied Charlene's motion because she did not show that the first five subsections of Rule 60(b) did not apply. *Essex*, ¶ 23. However, the District Court did not address this issue, but instead addressed the merits of Charlene's motion. It should be noted that "in cases of an attorney's mistake, inadvertence, misconduct or neglect in representation of a client, either subsection (1) or subsection (6) may be applicable, depending on the facts, the

nature and the seriousness of the mistake, inadvertence, misconduct, or neglect involved." *Karlen*, 276 Mont. at 190, 915 P.2d at 238. We find the facts here allow for relief under subsection (6).

¶14 The District Court abused its discretion when it denied Charlene's motion. The District Court's order does not analyze the elements Charlene attempted to prove, or even mention Rule 60(b). Rather, it restates the failures of Charlene's trial counsel, which were precisely the reasons for the Rule 60(b) motion, as the reasons for denying Charlene's motion.

¶15 Rule 60(b)(6) contemplates the situation faced by Charlene – it is designed primarily for situations where a party is wronged through no fault of its own. *In re Marriage of Hopper*, 1999 MT 310, ¶ 29, 297 Mont. 225, 991 P.2d 960. While Rule 60(b) is not a vehicle to allow a party to retroactively argue a factual issue on which it failed to submit evidence, *id.*, it does offer relief when a party's attorney commits gross neglect or actual misconduct. *Skogen*, ¶¶ 13, 20; *see Essex*, ¶ 25 n. 4 (listing elements).

¶16 Charlene's motion should have been granted. Charlene timely made her Rule 60(b)(6) motion, approximately 30 days after the District Court's order, and she was blameless. Charlene supplied her attorney with the realtor's letter, and according to her affidavit, was unaware Ms. Newman had failed to list the realtor as a witness. Charlene believed the case was progressing and had supplied Ms. Newman with what she thought was evidence for trial. Ms. Newman neglected to disclose the realtor as a witness. More importantly, Ms. Newman, on behalf of Charlene, did not present any evidence

whatsoever as to the only marital asset with any value – the marital home; she did not even ask Charlene what she thought the value was. Ms. Newman neglected Charlene by doing nothing to advocate for her on this issue, which was essentially the only issue before the District Court. *See Skogen*, ¶ 15 (attorney was neglectful for failing to preserve his client's objections by missing filing deadlines). This failure prevented a full presentation of the cause or an accurate determination on the merits. *See Essex*, ¶ 22.

¶17 The District Court had an obligation to "equitably apportion" the marital property. Section 40-4-202, MCA. The District Court seemed to realize that an appropriate valuation, and thus an equitable distribution, would not be the result in this case given the evidence presented. The District Court "reluctantly" accepted the value from the tax notice as its valuation, which it recognized may not be an accurate value,[1] and wondered on the record why an appraisal was not done. The District Court obviously had misgivings about the valuation and resulting distribution, and those misgivings were due to the neglect of Charlene's counsel.

## CONCLUSION

¶18 In the ordinary case, the client's remedy is a malpractice claim. However, we conclude that under these unique circumstances, where the District Court has a statutory obligation to equitably apportion the marital estate and Charlene's counsel totally failed to present evidence on the issue, the District Court abused its discretion in denying

---

[1] The District Court said "such tax notices do not necessarily accurately reflect the market value, but there was no appraisal and Charlene's expert had not been identified in advance to allow her to testify."

Charlene's Rule 60(b)(6) motion.  The District Court should have granted Charlene's motion, thereby allowing Charlene to present evidence regarding the value of the marital home, and the District Court to make an equitable distribution.  For these reasons, we reverse and remand to the District Court for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice Jim Rice, dissenting.

¶19   By granting relief here, I believe that the Court extends M. R. Civ. P. 60(b)(6) beyond the line drawn by our jurisprudence for "extraordinary circumstances" involving "gross neglect or actual misconduct" by an attorney.

¶20   We granted relief to the client whose attorney suffered "severe depression and emotion problems" which left him unable to adequately represent and communicate with the client, against whom judgment was entered, in *Ring v. Hoselton*, 197 Mont. 414, 418, 426-27, 643 P.2d 1165, 1168, 1172-73 (1982).  In *Lords v. Newman*, 212 Mont. 359, 361, 367-69, 688 P.2d 290, 292, 295-96 (1984), we granted relief where an attorney appeared in a case without authorization and then abandoned his clients and disappeared.  We

8

reasoned that the lawyer's actions "do not constitute mere bungling of his duties or ineffective representation. [The lawyer] totally abandoned his clients and disappeared from sight. To add insult to injury, before disappearing, [the lawyer] made a general appearance on behalf of the clients who had neither been served with process nor authorized him to so act." *Lords*, 212 Mont. at 367, 688 P.2d at 295. Under these circumstances we found it "unconscionable to apply the general rule charging the client with the attorney's neglect." *Lords*, 212 Mont. at 368, 688 P.2d at 295. In *Twenty-Seventh Street, Inc. v. Johnson*, 220 Mont. 469, 470-71, 716 P.2d 210, 210-11 (1986), we granted relief where the attorney improperly withdrew from representation and failed to notify the clients of a pending motion for default judgment. In *Karlen v. Evans*, 276 Mont. 181, 190, 915 P.2d 232, 238 (1996), we granted relief where the attorney "intentionally misled [the clients] into believing that their case was progressing and concealed from them the fact that the case had actually been dismissed." In *Maulding v. Hardman*, 257 Mont. 18, 23-28, 847 P.2d 292, 296-99 (1993), we granted relief based upon misconduct of the opposing attorney in obtaining a default judgment.

¶21 In contrast, we denied relief in *Schmidt v. Jomac, Inc.*, 196 Mont. 323, 639 P.2d 517 (1982), reasoning that "[t]he contention that counsel did not file an answer because he mistakenly relied on the automatic stay provision of the Bankruptcy Code is insufficient under the law" for relief under either Rule 60(b)(1) or (b)(6). *Schmidt*, 196 Mont. at 326-27, 639 P.2d at 519-20; *see also Karlen*, 276 Mont. at 186, 915 P.2d at 236. Similarly, we denied relief in *Griffin v. Scott*, 218 Mont. 410, 411-13, 710 P.2d 1337,

1337-39 (1985), under Rule 60(b)(1) when counsel failed to respond to a complaint and summons forwarded to him by his clients "because of the amount of mail and other work which had accumulated" over the Christmas holiday when he was gone. If this did not establish sufficient cause under subsection (b)(1), it certainly would not satisfy "the higher burden of demonstrating extraordinary circumstances, gross neglect or actual misconduct" required under subsection (b)(6). *Karlen*, 276 Mont. at 190, 915 P.2d at 238. In *Falcon v. Faulkner*, 273 Mont. 327, 330, 903 P.2d 197, 199 (1995), the client was sued and, on the advice of his counsel who believed Montana lacked jurisdiction over the client, failed to answer or appear. We denied relief under Rule 60(b)(6), reasoning that the attorney's advice, while "very bad indeed, nevertheless does not rise to the level of gross neglect. [The lawyer] believed [the client] was not subject to Montana jurisdiction, but he was wrong. He did not, however, abandon [the client] mid-way through an action, or misrepresent to [the client] the steps he was taking." *Falcon*, 273 Mont. at 334-35, 903 P.2d at 202. We also noted that the attorney's lack of malpractice insurance was not relevant to our consideration. *Falcon*, 273 Mont. at 335, 903 P.2d at 202.

¶22    We did clarify, in *Skogen v. Murray*, 2007 MT 104, ¶ 16, 337 Mont. 139, 157 P.3d 1143, that "total abandonment is not the standard" under Rule 60(b)(6) for the reason that gross neglect can occur when there is "continued contact between attorney and client." However, we granted relief on grounds similar to our previous cases: the lawyer had failed to file his client's objections while falsely telling the client not to worry about the

10

deadline as "he had an agreement with opposing counsel that the deadline would be extended." *Skogen*, ¶ 15.

¶23 In my view, our cases draw a consistent distinction between mere attorney error— even "very bad" error as in *Falcon*—and the gross error which must occur to satisfy the high burden of "extraordinary circumstances" required for relief under Rule 60(b)(6). *Karlen*, 276 Mont. at 190, 915 P.2d at 238. More than an error in legal judgment, the latter group of cases involve an attorney's malfeasance or concealment which misled the client about the client's legal interests or about the status of the client's proceeding. Here, the attorney litigated the case to its conclusion, trying the case in the client's presence. The client had the full opportunity to observe the proceeding, discuss the attorney's strategy, and to ask about the evidence she wanted submitted. As the Court notes, Rule 60(b) is not a vehicle to allow a party to retroactively argue a factual issue on which it failed to submit evidence. Opinion, ¶ 15.

¶24 Under our standard of review, Rule 60(b)(6) decisions are "left to the sound discretion of the trial court." *Karlen*, 276 Mont. at 190, 915 P.2d at 238. I would affirm the trial court.


/S/ JIM RICE

11