FILED

07/18/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0284

DA 22-0284

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 141N

IN RE THE ESTATE OF ELDA MARBLE

JERRY MARBLE, Personal Representative
for the Estate of Elda Marble,

Plaintiff and Appellee,

v.

DOREEN KING and JAMES D. KING,
a/k/a JIM KING,

Defendants and Appellants.

APPEAL FROM:     District Court of the Ninth Judicial District,
                 In and For the County of Pondera, Cause No. DV-18-58
                 Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

            For Appellant:

                 Doreen King, James D. King, Self-Represented, Conrad, Montana

            For Appellee:

                 Colleen M. Dowdall, Dowdall Law, Missoula, Montana

                                        Submitted on Briefs:  May 17, 2023

                                                    Decided:  July 18, 2023

Filed:

                 _____
                                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Doreen King and James King appeal the Ninth Judicial District Court's order granting summary judgment to the Estate of Elda Marble, awarding the Estate the sum of $83,000 minus credits and plus prejudgment interest, the repayment of a $30,000 loan plus prejudgment interest, ownership of a house, and ownership of personal property taken by the Kings after Elda's death. The Kings also appeal the District Court's denial of their M. R. Civ. P. 60(b)(6) motion for relief from that judgment.

¶3 We affirm in part and reverse in part. We reverse the District Court's grant of summary judgment on the $30,000 claim because the record does not support that the Estate was entitled to judgment as a matter of law. We also reverse the District Court's grant of summary judgment on the house because the statute of limitations expired on this asset prior to the commencement of these proceedings. We conclude, however, that the record supports granting summary judgment for the $83,000 claim and for the claim regarding the personal property taken from Elda's home after her death. The District Court did not abuse its discretion in denying relief from the judgment to that extent. We remand for further proceedings and to fix a scrivener's error in the Judgment.

¶4    The Estate of Elda Marble sued Elda's daughter Doreen King and son-in-law James King on October 23, 2018, through its personal representative Jerry Marble, Elda's son and Doreen's brother. The Estate alleged undue influence or fraud, theft, and conversion regarding a sum of $83,000 taken from Elda when she was alive, an unpaid loan of $30,000 from Elda to the Kings, ownership of a house fraudulently transferred from Elda to the Kings while Elda was alive, and the taking of Elda's personal property by the Kings from her home after her death. Contrary to the Kings' position that each of these exchanges of money and property happened willingly, Elda updated her will in 2017 leaving all the assets in question to Jerry.

¶5    In December 2012, Elda visited attorney Gary Bjelland to plan her estate. She was a widow in her 80s who had immigrated from Italy after meeting her late husband during World War II. Elda communicated to Bjelland that she possessed assets in the forms of a savings account from her late husband's life insurance policy and complete ownership of the house in which she lived. Bjelland's investigations revealed that Elda no longer had legal possession to these assets. The money had been moved out of a joint account that Elda held with Doreen into an account that Elda could not access. Elda had deeded the house to the Kings the previous year.

¶6    Believing that the Kings wrongfully deprived Elda of her assets, Bjelland requested that the Kings return the money to Elda and that they sign back the deed. After the Kings refused, alleging that Elda willingly signed the deed and allowed Doreen joint access to the money, Bjelland contacted Adult Protective Services. Bjelland's report led to criminal

3

charges against Doreen for exploitation of an older person, which were tried to a jury in 2014.

¶7     At her criminal trial, Doreen admitted that she moved her mother's money from a joint account into a separate account that Elda could not access. Doreen maintained that she did this because she was concerned that Jerry would take Elda's money. Doreen represented that Elda shared this concern. Doreen denied depriving Elda of the money permanently, stating that the money was "for [Elda], if she ever needs anything[.]" Doreen did not deny owning the house but expressed that Elda could live there until she died. Doreen testified that Elda signed over the deed because she was "afraid of Jerry," and Doreen "worried" about Elda's assets. Doreen denied any desire to send Elda to a nursing home, stating that she "made a solemn promise to [her] parents long ago" that she would assist them in living in their own home "until the moment [they] passed away." The trial culminated in a hung jury, and the State elected to dismiss the case without prejudice.

¶8     Elda died in a nursing home in 2017. Lynn Carlson, Elda's accountant, filed for probate of Elda's will. When Carlson arrived at the house to assess Elda's personal property and before he could enter the home, Doreen made Carlson sign a document titled "General Release and Settlement Agreement." The Kings believed this document settled any claims that the Estate might bring against them. Carlson did not share this understanding. Eventually, Carlson "did not have [the] energy to referee such hate and malice as exists between [Jerry] and [Doreen]" and resigned as representative of the Estate, allowing Jerry to take over. Jerry filed suit against the Kings on October 23, 2018, in his

capacity as personal representative of Elda's Estate. Jerry later retained counsel and filed the Amended Complaint on November 19, 2018.

¶9 The Estate served the Kings with discovery requests on February 21, 2020. The Kings never answered the discovery requests. The Estate moved for summary judgment almost a year later, arguing that there was no genuine factual dispute that the Kings misappropriated Elda's property without her knowledge or consent. The Kings maintained that there were genuine factual disputes regarding the appropriate ownership of the assets. The Kings also invoked the statutes of limitations for the Estate's claims to the assets of $83,000, $30,000, and the house. Additionally, the Kings argued that the Estate waived any claims it made when Carlson signed the General Release and Settlement Agreement. Further, the Kings noted that they should be allowed to answer discovery. The Kings did not move to file late responses.

¶10 After a failed mediation attempt, the District Court granted summary judgment in full on July 19, 2021. The District Court first reasoned that the requests for admission were deemed admitted for the Kings' failure to answer. It then found that the Bjelland affidavit established that Doreen took title to Elda's home and $83,000 of Elda's money without her permission. It further found, citing § 27-2-409, MCA, that the statute of limitations restarted on all the claims when the Kings made checks payable to Elda on January 23, 2017. It concluded that these checks constituted "acknowledgment of the debt and a re-set running of the statute of limitations[.]" The court therefore concluded that the suit was filed well within the applicable statutes of limitations. The court also found that the Estate

5

did not waive any of its claims because the General Release and Settlement Agreement did not constitute a contractual waiver. Based on these conclusions, the court granted summary judgment. Up to this point, the Kings were represented by Sam Harris. Prior to the entry of judgment, the Kings dismissed Harris and retained new counsel Michael Rausch.

¶11 The District Court awarded $83,000 to the Estate with credits of $2,900, $2,152.25, and $2,023 to the Kings for the partial payments they made to Elda prior to her death, with prejudgment interest. The court further awarded $30,000 with prejudgment interest. The court awarded to the Estate the personal property the Kings took from the house upon Elda's death; the house Elda had lived in; attorney's fees in the amount of $26,495.50; and $979 in costs.

¶12 The Kings moved for relief from judgment, arguing that summary judgment was unfairly decided on the deemed admitted requests for admission due to Harris's neglect and misconduct. The Kings also faulted Harris for not bringing evidence at summary judgment proving their ownership of the assets, including the transcript from Doreen's criminal trial in 2014. The District Court declined to respond to the motion within sixty days, and it was deemed denied. The Kings appealed. On appeal, Rausch withdrew as counsel, and the Kings proceeded pro se.

¶13 This Court reviews an order granting summary judgment de novo, applying the criteria from M. R. Civ. P. 56. *Safeco Ins. Co. of Am. v. Liss*, 2000 MT 380, ¶ 21, 303 Mont. 519, 16 P.3d 399. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file,' together with any

6

affidavits demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law." *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389 (citation omitted).

¶14 We review a district court's decision regarding a M. R. Civ. P. 60(b)(6) motion for abuse of discretion. *In re Marriage of Remitz*, 2018 MT 298, ¶ 8, 393 Mont. 423, 431 P.3d 338. "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Orcutt v. Orcutt*, 2011 MT 107, ¶ 6, 360 Mont. 353, 253 P.3d 884 (citation omitted). "When the district court refuses to set aside the judgment, only a slight abuse of discretion need be shown." *Orcutt*, ¶ 6 (citation omitted).

¶15 The Kings maintain that the statute of limitations expired on all claims. Even if the statute of limitations did not expire, the Kings argue that the District Court improperly relied on Bjelland's affidavit containing hearsay and on the unanswered requests for admission to conclude that there was no genuine issue of fact regarding any of the claims. If Bjelland's affidavit is permissible, the Kings argue that it reflects genuine disputes of material fact. The Kings maintain that Carlson signed a contractual waiver preventing the claims as well. Further, the Kings contend that they should not be deemed to have admitted the discovery requests because the Kings' attorney "neglected" and "abandoned" them. As such, the deemed admissions were not "competent evidence." We address the issue of the applicable statutes of limitations first.

7

*Statutes of Limitations*

¶16    "All civil actions must be commenced within the periods prescribed in [Title 27, Chapter 2, Part 2, MCA,] except when another statute specifically provides a different limitation." Section 27-2-105, MCA. "Generally, a claim accrues and the limitation period begins to run when all elements of the claim 'exist or have occurred.'" *Estate of Woody v. Big Horn Cty.*, 2016 MT 180, ¶ 9, 384 Mont. 185, 376 P.3d 127 (citing § 27-2-102, MCA).

¶17    The Kings argue that all statutes of limitations expired on the Estate's fraud and conversion claims.[1] "Section 27-2-207, MCA, imposes a two-year period of limitations on civil claims predicated on an alleged tortious conversion of personal property." *Drescher v. Malee*, 2022 MT 200, ¶ 12, 410 Mont. 305, 519 P.3d 17 (citations omitted). Personal property conversion claims accrue when the claimant is "aware, or reasonably should be, of facts sufficient to establish that the alleged tortfeasor was exercising or exerting unauthorized dominion or control over the property in a manner inconsistent with the claimant's property rights." *Drescher*, ¶ 12 (citations omitted). For claims based in fraud, the statute of limitations is two years after "discovery by the aggrieved party of the facts constituting the fraud or mistake." Section 27-2-203, MCA. When a case is brought by a personal representative to recover "personal property taken after the death of a testator" the

---

[1] The Estate alleged separate counts of "theft" and "conversion" in its Complaint. In its motion for summary judgment, it alleges "criminal theft." Theft is not a civil tort; we limit our discussion therefore to the torts of fraud and conversion. *See Bird v. Hiller*, 270 Mont. 467, 471 n.1, 892 P.2d 931, 933 (1995).

statute of limitations on tortious actions expires five years after death. Section 27-2-304, MCA.

¶18 The Estate brought a claim for conversion on the personal property taken from Elda's house after her death. This claim did not start accruing until after Elda's death, when the property was taken from the Estate, in 2017. *See* § 27-2-304, MCA. The Estate commenced these proceedings in 2018. This claim, therefore, was timely brought within the applicable five-year statute of limitations. *See* §27-2-304, MCA.

¶19 The Estate alleged that the $30,000 loan was fraudulently induced. It is not clear from the record when the claim for the $30,000 loan started to accrue, and therefore it is not clear whether the applicable statute of limitations expired as suggested by the Kings and denied by the Estate. Because the Estate alleges that the loan was fraudulently induced, the statute of limitations started to run when the loan was granted to the Kings or when Elda "discovered" that she gave the loan based on fraudulent facts. Nothing in the record reflects when the Kings received the $30,000 loan. The closest depiction of when the loan was granted is from the Initial Complaint, which states that the Kings received the loan "several years ago." The Kings rely on this depiction to argue that the claim for fraud is past its statute of limitations. The Estate argues that there was a written agreement regarding the loan and oral conversations regarding the loan. But the Estate provides no evidence that either agreement exists. The District Court made no finding as to when the statute of limitations started or expired on the $30,000 loan. Summary judgment is not appropriate based on this sort of speculative evidence. *See Emp'rs. Mut. Cas. Co. v. Estate*

9

*of Buckles*, 2019 MT 136, ¶ 16, 396 Mont. 153, 443 P.3d 534 (citation omitted). We cannot determine based on the record before us whether the statute of limitations expired on the claim for the $30,000 because it does not show when the claim accrued.

¶20 The Estate also alleged fraud regarding the transfer of the house deed. The Kings argue that the statute of limitations started to run in 2011, when the warranty deed was signed over to the Kings, alleging that any fraud or conversion claim accrued at this point because Elda should have known that she no longer possessed the house. Whether the statute of limitations began in 2011 with the transferred deed or in 2012 when Elda sought to write her will and "discovered" she no longer possessed the house, a claim for fraud was well past its two-year statute of limitations by 2018 when this proceeding commenced. The Estate argued at summary judgment that the claim for the house extended based on an oral agreement between the Kings and Elda. Again, the Estate provided no evidence to support this contention. This claim, therefore, expired by the time these proceedings commenced in 2018.

¶21 Finally, the Estate alleged conversion for the $83,000 taken from Elda's account without her permission. Based on undisputed facts from Bjelland's affidavit, Elda was not without access to the $83,000 until August 2012. The affidavit establishes that Elda was unaware she was without access until December 2012. It was at this point that a conversion claim started to accrue on this sum. This claim expired two years later in 2014, prior to the commencement of these proceedings in 2018.

10

¶22 Notwithstanding expiration of the limitation period on claims brought regarding a debt, § 27-2-409, MCA, allows the statute of limitations to renew when a party acknowledges or makes a partial payment on a debt. "Part payment" is "any payment of principal or interest." Section 27-2-409(3), MCA. "An acknowledgment must be contained in writing signed by the [debtor]." Section 27-2-409(2), MCA; *Hughes v. Hughes*, 2013 MT 176, ¶ 23, 370 Mont. 499, 305 P.3d 772.

¶23 The District Court found that the statutes of limitations for all the claims started anew on June 12, 2017, due to a partial payment that the Kings made to Elda in the form of a check. All the Estate's claims, it concluded, were brought within the applicable statutes of limitations when the claim was filed on October 23, 2018.[2]

¶24 The District Court did not determine when the statute of limitations expired on the $30,000 loan. It appears to have worked around this factual discrepancy by renewing the statute of limitations on this claim as of June 12, 2017. The record does not support restarting the statute of limitations under § 27-2-409, MCA, for the $30,000 loan. The checks do not include memos referencing the intended purpose of the checks and are addressed to both Doreen King and Elda Marble, with the remitter listed as Doreen King. Nothing in the record shows that the Kings made the checks as partial payment on the $30,000 loan. The record also does not support that Elda considered the checks to be partial payment on the loan. "A creditor retains the discretion to apply a payment to multiple

[2] The District Court's summary judgment order states that these proceedings were filed on November 4, 2018. The Case Register and the Initial Complaint reflect that the case was filed October 23, 2018. We use this date and treat the court's date as a scrivener's error.

11

promissory notes and thereby keep the statute of limitations running on each note." *Hughes*, ¶ 27 (citing *Mercer v. Mercer*, 120 Mont. 132, 136, 180 P.2d 248, 250 (1947)). The Estate argues that the checks apply to both. The requests for admission, however, reflect that the checks were partial payment for the $83,000 only. The record fails also to reflect that Doreen "acknowledged" the $30,000 loan to restart the statute of limitations under § 27-2-409(2), MCA. Because the record does not reflect when the claim for the $30,000 started to accrue and shows genuine disputes of material fact as to whether the statute of limitations restarted, the record does not support granting summary judgment on the $30,000.

¶25 Regarding the house, no evidence supports that the house was a "debt" within the meaning of § 27-2-409, MCA. Further, nothing in the record supports that the Kings made partial payments on the house or that the Kings acknowledged that the house was a debt. On appeal, the Estate argues that Doreen "acknowledged" that she owed Elda the house in 2017 at her trial, thus restarting the statute of limitations. The Estate incorrectly states that Doreen admitted this in 2017; her trial was in 2014, and she did not admit to owing the house to Elda. The record does not support extending the statute of limitations on the claim for the house. Summary judgment therefore was inappropriate.

¶26 The District Court concluded that the partial payments made by the Kings to Elda in 2017 renewed the statute of limitations on the claim to the $83,000 sum pursuant to § 27-2-409(3), MCA. The 2017 checks are found in the record in the unanswered discovery requests and attached as copies to the motion for summary judgment.

12

¶27 Pursuant to M. R. Civ. P. 36, requests for admission are deemed admitted and conclusively established after thirty days without response. When the Kings failed to provide answers to the discovery requests, under M. R. Civ. P. 36, the following requests for admission conclusively established that the Kings considered the $83,000 to be a debt and they made partial payments on this debt in 2017, successfully restarting the statute of limitations on this claim:

> Request for Admission No. 4. Please admit that you agreed to repay Elda Marble the $83,000 that you took from Elda Marble's bank account.

> Request for Admission No. 6. Please admit that on January 23, 2017 Jim King delivered two checks from [Doreen] and Jim King as partial payment to Elda Marble in the amounts of $2,990.00 and $2,152.25.

> Request for Admission No. 7. Admit that on June 12, 2017 you sent Elda Marble a payment in the amount of $2023.00 towards the repayment of the misappropriated $83,000.00.

> Request for Admission No. 8. Please admit that payments of $7,165.25 have been made towards the misappropriated $83,000.00 leaving a remaining balance owed to the estate of Elda Marble of $75,834.75.

The record supports that the claim for the $83,000 renewed in 2017 when the Kings made partial payments on this debt. The claim for the $83,000 was therefore timely brought within two years of the statute of limitations renewal and is not time-barred.

*Equitable Tolling*

¶28 The Estate argues on appeal that equitable tolling should extend any expired statutes of limitation that § 27-2-409, MCA, fails to extend. The Estate did not make this argument before the District Court. "We do not address new arguments and changes of legal theory on appeal[.]" *Davis v. State*, 2007 MT 207, ¶ 17, 339 Mont. 1, 167 P.3d 892. Whether

13

equitable tolling would appropriately extend the statute of limitations on the house or the $30,000—if the statute of limitations expired on this claim—is not a question appropriate for this appeal. We reverse the District Court's grant of summary judgment on the house and the $30,000.

*Summary Judgment*

¶29     Having concluded that the claims for the $83,000 money transfer and the personal property taken after Elda's death were timely brought, we consider whether the District Court correctly concluded that there was no genuine dispute of facts on these claims and the Estate was entitled to judgment as a matter of law. The Kings maintain that the record does not support summary judgment, contending that the Bjelland affidavit is impermissible as hearsay and the requests for admission should not be considered conclusive. The Kings contend further that Carlson released any claims that the Estate could bring when he signed the General Release and Settlement Agreement.

¶30     The first letter attached to the Bjelland affidavit was sent in December 2012 from Bjelland to the Kings requesting the return of $83,000. Supporting this request, Bjelland discovered that the withdrawal occurred in August 2012 based on his own investigations into Elda's bank accounts. The Bjelland affidavit includes a response to this letter from the Kings' attorney. The Kings' attorney replied that Elda requested the bank send statements to Doreen, and that the bank account was a joint account. The letter expressed a concern that Elda was now under Jerry's influence, and that Jerry was affecting Elda's understanding of the events that took place between her and the Kings. Bjelland attached

14

to his affidavit a letter he wrote to Adult Protective Services, stating that he did "not believe the explanations provided in the letter from [the Kings' attorney]" as to why Doreen had possession of Elda's assets. He further wrote that "[j]ust because [Doreen] may have the legal right clearly does not mean it is right" in reference to the Kings' refusal to return Elda's assets.

¶31 The Bjelland affidavit establishes that when Elda was drafting her will, she thought she had access to the $83,000 and did not realize until her estate planning that she no longer possessed this asset. The Bjelland affidavit does not, however, establish without genuine dispute that Elda did not want Doreen to have unfettered access to the $83,000 when the two initially created a joint bank account together. Summary judgment nonetheless was appropriate, however, because the Estate did not waive any claims and the requests for admission conclusively establish the Estate's entitlement to the $83,000 and the personal property. *See Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 25, 365 Mont. 375, 286 P.3d 241 (citation omitted) ("We may uphold a judgment on any basis supported by the record, even if the district court applied a different rationale.").

¶32 The General Release and Settlement Agreement does not demonstrate a genuine dispute of fact or serve to bar the Estate from bringing the claims. The Kings represent the General Release and Settlement Agreement as a contractual waiver. The District Court was correct that the language of the Agreement was not clear or unambiguous and the Agreement was therefore not determinative of the Kings' and Carlson's intent. *See Mary J. Baker Revocable Tr. v. Cenex Harvest States, Coops., Inc.*, 207 MT 159, ¶ 19,

15

338 Mont. 41, 164 P.3d 851. The Agreement does not address any consideration for the Estate waiving its claims. Nor does the Agreement state clearly what exchange is happening with regards to the Estate removing "personal property" from the house in exchange for "James and Doreen King . . . withdraw[ing] the portion of the creditor claim for $2,200.00." Carlson's affidavit establishes that he signed the Agreement without reading it because it was presented to him when he arrived to clean out Elda's house, and Doreen barred him entry prior to his signing. Carlson's affidavit further establishes that the elements of the Agreement were not discussed between the Kings and him. The District Court correctly concluded that this document did not meet the standard of a contractual waiver and did not prevent the claims brought by the Estate.

¶33 Having concluded that nothing hindered these claims, we address the support found in the record for awarding the Estate the $83,000 and the personal property. The following requests for admission establish that the Estate is entitled to the $83,000 taken by the Kings under a theory of conversion.

> Request for Admission No. 1. Please admit that you withdrew $83,000 from Elda Marble's account without her knowledge or consent in late 2012.

> Request for Admission No. 2. Please admit that you deposited $83,000 from Elda Marble's account into a joint account held by [Doreen] and James King.

> Request for Admission No. 3. Please admit that you kept the money in an account that Elda Marble did not have access to.

> Request for Admission No. 14. Please admit that you did not have Elda Marble's consent to remove money from her account nor did you discuss it with her before you took the money.

16

¶34 The requests for admission also establish that the Kings took personal property belonging to Elda upon her death:

> Request for Admission No. 15. Please admit that you have or had valuable items of personal property, including heirlooms brought from Europe by Elda Marble that you took from Elda Marble's home.

> Request for Admission No. 16. Please admit that the items you took from Elda Marble's house are the property of the estate and by the will signed by Elda Marble, these items were to pass to her named heirs.

¶35 The Kings argue that it is unfair to rely on the requests for admission to grant summary judgment because their attorney neglected them when he failed to answer discovery. For this reason, they argue that they are entitled to relief from judgment, under M. R. Civ. P. 60(b)(6). To prevail on such a motion, the movant must prove "gross neglect or actual misconduct by the attorney," that the movant timely moved to set aside judgment, and that the movant was blameless. *Orcutt*, ¶ 12. In *Griffin v. Scott*, we upheld the denial of a M. R. Civ. P. 60(b)(6) motion because the attorney's clients "did nothing to check on the suit" and a complaint against them went unanswered, resulting in a default judgment. 218 Mont. 410, 413, 710 P.2d 1337, 1338-39 (1985).

¶36 Based on the Kings' recounting of events, Harris received the discovery requests on February 21, 2020, but the Kings did not learn of the request until March 12, 2020. The Kings asked Harris when discovery was due. In response, Harris assured them that he secured extensions with opposing counsel, and that he would get in touch with them the following Monday to work on the discovery requests. There is no evidence that Harris met with the Kings as promised. But the District Court did not deem admitted the requests for

17

admission until over a year later. The Kings knew about the discovery requests, but they did not provide evidence that they contacted Harris to communicate about discovery after Harris said he would follow up and did not. They also did not move for leave to file late responses to discovery between the February 2021 motion for summary judgment and the grant of summary judgment in July 2021.

¶37 We have addressed the issue of granting summary judgment "where the basis is a failure to respond to requests for admissions." *Holmes & Turner v. Steer-In*, 222 Mont. 282, 285, 721 P.2d 1276, 1278 (1986) (citation omitted). We have noted that "the very purpose of Rule 36 is to lessen the time of trial and ultimately to set the stage for summary judgment." *Holmes & Turner*, 222 Mont. at 285, 721 P.2d at 1279. Here, the requests for admission were automatically admitted and conclusively established after thirty days without response pursuant to M. R. Civ. P. 36. At summary judgment, the District Court noted that the Kings went seventeen months without responding to the requests for admission and that "no reasonable person" would believe that the court allowed a seventeen-month extension for replying to discovery. The requests for admission appropriately were admitted, and the District Court acted within its discretion when it did not grant relief from judgment on this ground.

¶38 The Kings argue further that they are entitled to relief from judgment, beyond reliance on the requests for admission, because Harris failed to produce evidence that showed a genuine dispute of fact regarding the claims. The Kings point specifically to Harris's failure to produce the entirety of Doreen's criminal trial transcript prior to

18

summary judgment. "A motion under Rule 60(b)(6) 'must be something more than a request for rehearing or a request that the District Court change its mind. It must be shown that something prevented a full presentation of the case or an accurate determination on the merits and that for reasons of fairness and equity redress is justified.'" *Estate of Kinnaman v. Mt. W. Bank, N.A.*, 2016 MT 25, ¶ 30, 382 Mont. 153, 365 P.3d 486 (citation omitted).

¶39    Having reviewed the criminal trial transcript, we conclude that the transcript's absence from the summary judgment record did not prevent a "full presentation of the case" such that fairness and equity require a reconsideration of summary judgment on the $83,000 or the personal property award. The taking of the personal property from Elda's home had not occurred at the time of trial in 2014; the transcript therefore has no effect on this claim. Under the preponderance standard applied to civil cases, the transcript would not necessarily weigh in favor of the Kings on the remaining claim. At the criminal trial, Doreen admitted that she put the $83,000 in an account where her mother could not personally access it.

¶40    The Kings did not provide compelling evidence in their M. R. Civ. P. 60(b)(6) motion that evidence was kept from the record at summary judgment due to the "gross neglect" or "actual misconduct" of Harris. We affirm the District Court's denial of the motion for relief from judgment regarding the $83,000 and personal property awards to the Estate.

¶41    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm the District Court's grant of summary judgment awarding the Estate $83,000 for monies Doreen misappropriated from Elda and the personal property that the Kings took from the home. We remand the judgment on this award to fix the scrivener's error to amend the "$2,900" credit to a "$2,990" credit toward the $83,000 amount. We reverse the District Court's grant of summary judgment awarding the Estate Elda's house and reimbursement of the $30,000 loan. The case is remanded for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE